■ ROBERT E. DIZAK, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 67907.)—Main, J. P.

On October 8, 1982, claimant and John Faulkner were inmates at Adirondack Correctional Facility. Both were assigned to an inside ground crew detail which had been given the task of cleaning up an area within the facility. Appropriate tools for the job were provided by the facility. Faulkner obtained a pickax from one of the other workers, disengaged the handle and, without apparent provocation, began to strike claimant about the head and face with the wooden handle until correction officers subdued Faulkner.

Thereafter, claimant commenced this action against the State, alleging that the State was guilty of negligence in permitting Faulkner to have access to a pickax when it knew or should have known of his propensity toward violence and in failing to confine him in a more secure environment. This cause proceeded to trial on the sole issue of liability. At its conclusion, the Court of Claims dismissed the claim, holding that the evidence presented failed to establish that the State knew or should have known of Faulkner's tendency toward violent behavior, that the general supervision provided was adequate and that the State was not negligent. Claimant has appealed, contending that the decision is contrary to the weight of the credible evidence and that the court erred in excluding a portion of one of claimant's exhibits from the evidence.

It is well established that the State had a duty to provide inmates of its correctional facilities with "reasonable protection against foreseeable risks of attack by other prisoners" (Sebastiano v State of New York, 112 AD2d 562, 564) and may be cast in damages for its failure to discharge such duty (see, Matter of Van Holden v Chapman, 87 AD2d 66). Claimant asserts that the incident was foreseeable and that the duty was breached. This assertion is bottomed on the evidence presented which demonstrated that Faulkner had been the subject of 11 or 12 misbehavior reports which, according to claimant, provided a clear signal to the State that Faulkner was both unstable and capable of violent conduct. We cannot agree. To begin with, all but two of the reports concerned minor nonviolent violations such as unauthorized use of his radio and watching television at unscheduled times. The other incidents involved threatening a guard and punching another inmate after a shoving incident in the mess hall line. There was no evidence of bad feelings between claimant and Faulkner, and claimant testified that he had never met his assailant. A consideration of all of the evidence leads inescapably to the conclusion that it could not be reasonably foreseen that Faulkner would commit such a vicious assault on claimant or anyone else. Moreover, a guard continuously patrolled the work area checking on each member of the work detail. There was no evidence that the guard was other than efficient in carrying out his duties of supervising the detail or any valid showing that Faulkner should have received more supervision than the other members of the detail. We must review the record in a light most favorable to sustain the judgment and should not disturb the finding and determinations of the trial

court where, as here, they are not against the weight of the credible evidence or contrary to law *(see, Merrill Transp. Co. v State of New York,* 97 AD2d 921).

During the trial, claimant's exhibit No. 7, one of Faulkner's misbehavior reports, was offered into evidence and received; however, the last portion thereof was excluded over claimant's objection. The excised portion follows: "From what I have seen of this inmate he is not material for this kind of confinement. At any time he could cause a major incident on a floor. He has almost caused two already."

While the correction officer making the report, who also testified at trial, was justified in testifying as to his observations, there was no showing that he had the training and education to qualify him as an expert to render the above opinion dealing with the classification of prisoners. Moreover, it appears from the testimony that the rendering of such an opinion was not a part of his duties and constituted opinion evidence by a lay witness on an issue to be decided by the trier of fact; as such, it was clearly inadmissible *(see, Nelson v X-Rays Sys.,* 46 AD2d 995, 996; *Hartley v Szadkowski,* 32 AD2d 550). Further, even if the material was improperly excluded, there should be a reversal only where the excluded matter would have had a substantial influence in bringing about a different verdict or finding (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2002:1, p 449). Since the excluded material does not rise to that level, the judgment should be affirmed.

Judgment affirmed, without costs. Main, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.