■ John Schittino, Appellant, v State of New York, Respondent. [692 NYS2d 760] —Mikoll, J. P. Appeal from a judgment of the Court of Claims (King, J.), entered June 29, 1998, upon a decision of the court in favor of the State.

Claimant, an inmate at Great Meadow Correctional Facility in Washington County, alleged in this negligence action that the State was responsible for injuries he sustained when another inmate threw a five-gallon urn of hot coffee at him. Following a bifurcated trial on the issue of liability, the Court of Claims determined that the State was not negligent and plaintiff appeals.

The events leading up to the assault were recounted by claimant as follows. For some time prior to the incident date, claimant had voluntarily remained in his cell through meals and recreation time because of actual and perceived threats of violence from other inmates based upon the sex offenses for which he was incarcerated. At approximately 7:30 A.M. on July 8, 1993, while sleeping in his cell, he was awakened by Lawrence Gaines, an inmate assigned to "feed-up" duties, i.e., distributing food to those inmates who did not eat with the general prison population in the cafeteria. Gaines kicked the bars of claimant's cell to rouse him and thereafter demanded "sugar" (an extortion payment) from claimant.[1] When claimant replied that he had nothing left to give, Gaines threw the contents of a one-half gallon container of coffee through the bars at him. Claimant then threw a cup of liquid at Gaines' face. According to claimant, Gaines "went ballistic", and paced up and down in front of claimant's cell for a period of "two to two and a half minutes", screaming threats and obscenities at him. During this interval, claimant testified, the two correction

---

1. Claimant testified that Gaines had previously extorted money and other articles from him, but conceded that he had not reported this to prison officials.

officers who were in charge of his area remained seated at a table some 20 to 25 feet away and did nothing to intervene except to instruct Gaines to get back to work. Gaines then removed the top from a five-gallon urn of hot coffee and threw it at claimant, causing extensive first and second degree burns.

Neither of the two correction officers assigned to claimant's area of the prison testified at trial. A third officer, K. Aubin, who witnessed most of the incident while moving his group of inmates through the area, testified that he saw claimant throw the liquid at Gaines and that the latter retaliated "almost instantly". Although he did not see Gaines throw any liquid at claimant first, he acknowledged the possibility that this had occurred.

The State's duty to an incarcerated person encompasses protection from the foreseeable risk of harm at the hands of other prisoners. Because the State is not an insurer of an inmate's safety, it will be liable in negligence for an assault by another inmate only upon a showing that it failed to exercise adequate care to prevent that which was reasonably foreseeable (*see, Blake v State of New York*, 259 AD2d 878; *Pierrelouis v State of New York*, 255 AD2d 824; *Stanley v State of New York*, 239 AD2d 700; *Colon v State of New York*, 209 AD2d 842). Applying these well-settled principles here, we conclude that the Court of Claims properly determined that claimant failed to make the requisite showing.

We note at the outset that claimant does not contend that Gaines was a "known, dangerous prisoner [so as to] place the State on notice of an increased likelihood of an assault and impose a heightened duty to take special precautions" (*Colon v State of New York, supra*, at 844; *see, Littlejohn v State of New York*, 218 AD2d 833; *Dizak v State of New York*, 124 AD2d 329). To the extent that claimant argues that Gaines' violent propensities and inmate disciplinary history rendered him unsuitable for duties as a "feed-up worker", the State's discretionary decision to employ Gaines in that capacity is insulated by a qualified immunity (*C. v State of New York*, 188 AD2d 506, *lv denied* 82 NY2d 655) and, based upon our review of the record, we find no bad faith or lack of a reasonable basis for the discretionary decision.

Claimant next maintains that the State violated a regulation or established procedure requiring a correction officer to accompany the feed-up worker during the performance of his tasks. The record does not support his allusions to such a mandate. Although claimant testified to such a practice elsewhere in the facility, this testimony was insufficient to es-

tablish the existence of a prison regulation, policy or procedure requiring that this be done. In fact, claimant testified that the guards in his location always sat at the table during feeding times and the testimony cited by claimant does not persuade us otherwise.

In essence, therefore, claimant's claim is bottomed upon the State's alleged negligence in failing to intervene in his altercation with Gaines. It is undisputed that Gaines' act of throwing the coffee urn at claimant was a response to claimant's throwing a container of liquid at Gaines. Critical to claimant's theory of liability, therefore, is acceptance of his version of the incident, which describes an interval of minutes between his throwing the container of liquid and Gaines' action in throwing the coffee urn at him. The Court of Claims did not credit this aspect of claimant's testimony, however, finding that it "stretches credulity to the breaking point". Rather, the court accepted Aubin's testimony that Gaines reacted instantaneously and threw the coffee at claimant within seconds after claimant threw the liquid at him. While we are empowered to independently review the evidence and reach a contrary determination where warranted, "where, as here, the trial court's findings are based in large part on credibility assessments, they are entitled to deference" (*Diaz v State of New York*, 256 AD2d 1010; *see, Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499; *Roudette v State of New York*, 224 AD2d 808, 809). We thus find ample support for the conclusion that the conduct resulting in the injury to claimant was not reasonably foreseeable.

We turn briefly to claimant's remaining contentions. Although ultimately unavailing, we acknowledge the legitimacy of his objection to the receipt of Aubin's testimony based upon the State's failure to identify this witness in its responses to claimant's discovery demands, or to supplement its responses at such time as it determined he would be called. The State offered no tenable excuse for its failure to comply and we are not particularly persuaded that this failure was mitigated by the fact that Aubin's name appeared on a misbehavior report given to claimant. Nor do we subscribe to the notion that Aubin's testimony was not prejudicial to claimant, particularly since it formed the principal evidentiary basis for the Court of Claims' determination. Having adopted the position, however, that absent demonstrably "willful and contumacious" conduct, the drastic remedy of preclusion should not be applied (*Rankin v Miller*, 252 AD2d 863, 864; *see, Maillard v Maillard*, 243 AD2d 448), we deem it inappropriate to interfere in this instance

with a trial court's broad discretion in resolving issues relating to noncompliance with discovery demands (*see, Ashline v Kestner Engrs.*, 219 AD2d 788, 790).

Nor do we find error in the Court of Claims' refusal to draw a missing witness inference based on the State's failure to call one of the two officers present when the incident occurred.[2] Initially, we note that this officer was not listed on the State's discovery response as an intended witness, just as Aubin was not. Although claimant argues to the contrary, he was not precluded by 7 NYCRR 51.1 or Correction Law § 112 from deposing this witness or securing his presence at trial by means of subpoena.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed, without costs.

 ---

**2.** The other officer was no longer in the State's employ at the time of trial.