OPINION OF THE COURT
Caesar Cirigliano, J.
Petitioner by way of a writ of habeas corpus seeks the vacatur of his parole warrant on the basis that the period of postrelease supervision administratively imposed by the Department of Correctional Services (hereinafter DOCS) violates his due process rights.
On October 21, 2002, petitioner was sentenced by the Honorable Carolyn E. Demarest of Supreme Court, Kings County, to concurrent terms of three years for assault in the second degree and one year for promoting prostitution in the fourth degree. At the time of sentencing, the court did not impose the mandatory period of postrelease supervision as required by Penal Law § 70.45. Regardless, a five-year period of postrelease supervision (hereinafter PRS) was administratively imposed by DOCS and on October 7, 2004 petitioner was released to postrelease supervision. He was to be supervised by the Division of Parole until October 1, 2009.
Petitioner was charged with violating four conditions of his release to parole supervision and on July 1, 2006 was declared delinquent with respect to his parole obligation. On July 12, 2006 parole warrant No. 440333 was issued and lodged, and petitioner was served with a notice of violation and violation of release report on the same date. At his preliminary parole hearing, on July 20, 2006, the hearing officer made a finding of probable cause. Petitioner’s final parole revocation hearing was scheduled for September 21, 2006 and prior to it, petitioner brought the instant writ alleging that his period of postrelease supervision was improper.
*470 Arguments
Petitioner’s primary argument rests upon the recent decision of Earley v Murray rendered by the Second Circuit (451 F3d 71 [June 9, 2006]) which held in part that PRS is not merely a direct consequence of a determinate sentence but is in fact part of the sentence itself and as such it may only be imposed by the sentencing judge and a nullity if imposed administratively after sentencing. Thus, on that basis, petitioner argues that the five-year PRS imposed upon him by DOCS was unlawful and therefore the parole violation warrant must be vacated.
Respondent, however, argues that petitioner must move by CPL 440.10 as it is the proper remedy to challenge the imposition of PRS. Respondent also relies on recent Supreme Court, Bronx County, decisions (People ex rel. Garner v Warden, Gross, J., Index No. 51225/96, slip op, at 4-5; People ex rel. Franklin v Warden, Clancy J., Index No. 51409/06; People ex. rel. Smith v Dennison, Tallmer, J., Index No. 1246/06; People ex. rel. Nelson v Warden, Tallmer, J., Index No. 51575/06) where my colleagues in the Bronx Supreme Court dismissed writs of habeas corpus on the ground that a CPL article 440 motion is the proper vehicle for challenging the imposition of PRS. In addition, respondent argues that Earley (supra) is a federal decision and, thus, it is not controlling precedent in this court. Respondent cites People v Kin Kan (78 NY2d 54 [1991]) which stands for the proposition that the interpretation of federal constitutional law by a lower federal court is persuasive but not binding authority on New York courts. Nevertheless, respondent relies on Earley (supra) to argue that the decision requires petitioner to “exhaust his administrative remedies, which include a § 440 motion, prior to filing a habeas corpus petition,” and that failure to file a CPL article 440 motion must result in the dismissal of the petition.
Moreover, relying on the recent Appellate Division case of People v Sparber (34 AD3d 265, 266 [1st Dept 2006]) which held that postrelease supervision is included in the sentence and that the “constitutional requirement that a sentence be ‘entered upon the records of the court’ ” is satisfied where the court, acting through a court clerk, imposes PRS in the “commitment sheet.” Therefore, respondent argues that “if post-release supervision is imposed in the commitment sheet, that is sufficient and the court does not need to entertain a 440 motion.” However, if PRS is not in the commitment sheet, since the First Department has held that PRS is “automatically *471 imposed,” petitioner’s only relief is to file a CPL article 440 motion.
In response to respondent’s argument regarding People v Sparber (supra), petitioner submits a photocopy of his “commitment sheet” dated October 21, 2002 and signed only by the clerk of the court detailing the petitioner’s stated sentence; however, it does not allude to, state, or indicate any period of postrelease supervision.
Discussion
Writ of Habeas Corpus
The first issue to be addressed is whether a writ of habeas corpus is the proper remedy to address the legality or illegality of an administratively imposed five-year period of postrelease supervision.
CPLR 7002 (a) states:
“(a) By Whom Made. A person illegally imprisoned or otherwise restrained in his liberty within the state . . . may petition without notice for a writ of habeas corpus to inquire into the cause of such detention and for deliverance. A judge authorized to issue writs of habeas corpus having evidence, in a judicial proceeding before him, that any person is so detained shall, on his own initiative, issue a writ of habeas corpus for the relief of that person” (emphasis added).
In the instant case, petitioner is currently imprisoned as a result of an administratively imposed period of postrelease supervision and it is within his right to inquire as to the “cause of such detention.” Specifically, petitioner, under CPLR 7002, has a right to inquire as to the reason why he should be imprisoned on a parole violation when he was sentenced to a determinate period of time and served said time. He has a right to inquire why he has been given an additional period of supervision by DOCS, an administrative agency, when he was not informed of this by his sentencing judge on Hie record. Therefore, a writ of habeas corpus is a proper remedy to address the legality or illegality of an administratively imposed five-year period of postrelease supervision.
I have reviewed all of the decisions by my colleagues who have addressed the failure of the court to advise a defendant at the time of sentence of the imposition of PRS and have read all the cases cited within their decisions. I concur in their opinions *472 that a defendant has the right and option to review an improper sentence by either a motion pursuant to CPL article 440 or appeal; however, I obviously disagree as to the exclusivity of the remedy.
Moreover, I have also reviewed those cases that hold that PRS is automatically included in the sentence and thus obviates the need for a judge to clearly set forth on the record that PRS is part of the sentence unless said judge seeks to shorten the mandatory five-year period. (See, People v Sparber, supra; People v Hollenbach, 307 AD2d 776 [4th Dept 2003]; People v Crump, 302 AD2d 901 [2003]; People v Thweatt, 300 AD2d 1100 [2002]; People v Bloom, 269 AD2d 838 [2000].)
In People v Bloom (at 838), the Appellate Division, Fourth Department, relying on Justice Donnino’s Practice Commentary in McKinney’s Consolidated Laws of New York, held that “There was no need for the court to specify a period of post-release supervision.” Justice Donnino in his commentary states that “[f]or violent felonies committed on or after September 1, 1998, for which a determinate sentence of imprisonment is imposed, a period of ‘post-release supervision,’ provided for by this section is included as part of that determinate sentence of imprisonment,” which merely repeats the section (Book 39, Penal Law § 70.45, at 396). There is not the slightest indication that Justice Donnino, whom I have the greatest respect for, considered the issues which this court is presently called upon to decide: issues such as the due process rights of a defendant to be informed at sentence of all the terms and conditions; the imposition of sentence by an administrative body; and whether PRS is automatically included in a sentence. Similarly, most of the Appellate Division cases that have held that the imposition of PRS is automatic have not addressed the due process issues and are distinguishable.
Statutory Mandate
Penal Law § 70.45 (1) states: “Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision” (emphasis added).
“[T]he sentence imposed by a sentencing judge is controlling; it is this sentence that constitutes the court’s judgment and authorizes the custody of the defendant” (Earley, 451 F3d at 74, citing Hill v United States ex rel. Wampler, 298 US 460 [1936]). In discharging this duty, it is incumbent upon the court to be vigilant as it assures that the defendant’s constitutional rights are protected. Obviously, in order to comport with the Due Pro *473 cess Clause of the Constitution of the United States and the Constitution of the State of New York, the court in imposing a sentence must be specific as to the components of said sentence and must rest comfortably in the fact that defendant has complete understanding of what his sentence entails.
The petitioner, herein, was tried, convicted and sentenced to a determinate period of time. At the time of sentence, the court properly advised the respondent of the specific period of incarceration but unfortunately omitted to pronounce that there would be a period of postrelease supervision. The petitioner served the specific terms of imprisonment which the court imposed and upon his release was advised by DOCS that he was required to serve an additional five-year period of PRS. Thus, the issue before this court is simply whether the petitioner, who is currently incarcerated, was denied his due process rights under the Constitution of the United States and the Constitution of the State of New York (NY Const, art I, § 6) by the administrative imposition, postsentence, of additional terms of sentence upon which he is now being held. The answer is, clearly, yes.
In People v Catu (4 NY3d 242 [2005]) the Court of Appeals held that:
“ ‘A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences.’ Although the court is not required to engage in any particular litany when allocuting the defendant, ‘due process requires that the record must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.’ ” (Catu at 244-245, quoting People v Ford, 86 NY2d 397 [1995] [citations omitted].)
Moreover, the Court held that “a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction.” (Catu at 245 [emphasis added].) Furthermore, the Court emphasized the mandatory component of the imposition of postrelease supervision.
There is no doubt that the Court of Appeals sought to ensure that the due process rights of a defendant were being protected *474 in cases where said defendant takes a plea and that failure to advise him of that additional part of his sentence results in the reversal of that conviction. The necessity of protecting a defendant’s due process rights does not reside exclusively in cases where a defendant takes a plea but it extends, as well, to cases where a defendant is being sentenced after trial. Thus, a court must clearly enunciate on the record, in open court, the terms and conditions of the sentence and must be satisfied that the defendant has a complete understanding of what the sentence entails.
The same goal of seeking to protect the defendant’s due process rights was seen in the recent decision of Earley v Murray (supra), which relied substantially if not solely on the United States Supreme Court decision in Hill v United States ex rel. Wampler (298 US 460 [1936]). In Wampler, the clerk of the court, pursuant to custom, added a condition to the defendant’s sentence of 18 months and a $5,000 fine, specifically, that the defendant was to remain in custody until his fine was paid. In holding that the clerk did not have the power to alter the sentence imposed by the court by way of a “warrant of commitment,” Justice Cardozo opined that “the only sentence known to the law is the sentence or judgment entered upon the records of the court . . . [u]ntil corrected in a direct proceeding, it says what it was meant to say, and this by an irrebuttable presumption.” (298 US at 464.) The Court in Wampler, therefore excluded a “warrant of commitment” prepared by a clerk of the court.* This is clearly analogous to DOCS imposing PRS post-sentence where a judge has not imposed it, on the record.
Now in the matter of Earley (supra), the court relied substantially on Wampler (supra) to hold that the additional imposition of PRS upon a defendant by DOCS was unlawful as it violated the defendant’s constitutional rights and, moreover, that the additional provision of PRS imposed by DOCS is a “nullity” (452 F3d at 76).
The respondent in Earley (supra) consequently petitioned the court for rehearing of the decision and argued in part that the court “failed to recognize that New York law automatically includes a period of PRS in every determinate sentence” (462 F3d 147, 148 [2006] [emphasis added]). The court, however, held fast to its prior determination and rejected respondent’s *475 arguments, once agaih stating that “we adhere to our view that the inclusion of a five-year period of PRS in [petitioner’s] sentence when that PRS was not included in the sentence imposed at [petitioner’s] sentencing hearing violated his rights under the Due Process Clause of the US Constitution” (462 F3d at 148). Further, the court emphasized that a “judicially-imposed sentence includes only those elements explicitly ordered by the sentencing judge” (Earley v Murray, 462 F3d 147, 149 [2006]).
This court is aware that the interpretation of federal constitutional law by a lower federal court is persuasive but not binding authority on New York courts. (People v Kin Kan, supra.) However, what makes the decision in Earley extremely persuasive is its adherence, reliance, and interpretation of Wampler (supra) and the United States Constitution.
In the case at bar, as in Earley, the petitioner was sentenced to a determinate period; PRS was not imposed upon him at the time of sentencing but administratively imposed upon him post-sentence by DOCS. Petitioner has served the time imposed upon him by the court and now is being held based on DOCS’ imposition of PRS. Clearly, the imposition of PRS by DOCS is unlawful as it is violative of the Due Process Clause of the Constitution of the United States and the Constitution of the State of New York.
In People v Sparber (supra) the First Department held that PRS is automatic and significantly for the first time the Court addressed the prevalent constitutional issues by holding that an entry of a “commitment sheet” prepared by a clerk of the court and signed by the sentencing judge was sufficient to satisfy the constitutional requirements. Sparber is distinguishable from the instant case in that, simply, the evidence before the court indicates that the “commitment sheet” prepared by a court clerk which was not signed by the judge does not include a period of postrelease supervision. Hence, the sentence is purely that which was imposed by Justice Demarest on the record, in open court and nothing more.
Accordingly, as the action by DOCS of administratively imposing PRS upon the petitioner postsentence violates the petitioner’s due process rights under the Constitution of the United States and the Constitution of the State of New York, this writ is thereby sustained.

 Even though it may have been common practice or custom to include a hold on a defendant until the fine in question was paid, the court in Wampler nevertheless found the inclusion of that condition unlawful.