OPINION OF THE COURT
Judith A. Hard, J.
Claimant Tyrone Mickens is one of many former prisoners who was required to serve a term of postrelease supervision (PRS) that had been imposed by the Department of Correctional Services (DOCS) rather than by the court when he was sentenced following his criminal conviction. He commenced this action based on allegations of false imprisonment and violation of his civil rights and now moves for summary judgment in his favor on the issue of liability, on the principles of res judicata, relying on a Supreme Court decision that held DOCS’ action in imposing a term of PRS on claimant to be unlawful. Defendant opposes and cross-moves for summary judgment dismissing the claim on the ground that DOCS’ action was privileged and cannot give rise to civil liability because Penal Law § 70.45 required that claimant serve a period of PRS.[1]
On September 16, 1999, claimant pleaded guilty to the crime of attempted robbery in the second degree, and on October 25, 1999 he was given a determinate sentence of three years in prison. At the time of his sentencing, Penal Law § 70.45 (1) required that every determinate sentence also include “as a part thereof’ an additional period of postrelease supervision. Under the statute as it existed at that time, and with certain exceptions not relevant to claimant, the term of PRS was to be five years. The sentencing judge failed to advise claimant that PRS would be a part of his sentence, either during the negotiations leading to his plea agreement or at the time of his sentencing (Levine affirmation, exhibits C, D [transcripts]). Thereafter, at some point prior to the completion of claimant’s three-year *193 prison term, DOCS became aware that neither the court’s sentence nor the commitment order transferring claimant to DOCS’ custody included any reference to the mandatory PRS. Acting on its own and not in response to any direction from the sentencing court, DOCS administratively imposed a five-year term of PRS on claimant. Consequently, when claimant was released from prison on November 8, 2001, he was placed under the supervision of the Division of Parole and subject to the conditions and restrictions of PRS.
During the following years, on at least three occasions, claimant was arrested and jailed for alleged parole violations. The confinement periods in connection with these arrests interrupted the running of claimant’s five-year term of PRS (Penal Law § 70.45 [5] [d]), with the result that the PRS expiration date was pushed back from November 8, 2006 to April 9, 2008. In the fall of 2007, when he had again been arrested for a parole violation and was again incarcerated in a local correctional facility, claimant commenced a habeas corpus proceeding, asserting that his detention was illegal since he had not been sentenced to PRS by a court. Nassau County Supreme Court Justice Frank A. Gulotta, Jr. granted the petition, holding that “a PRS sentence can only be imposed by the sentencing judge and not administratively by the Department of Correctional Services (DOCS) or the New York State Division of Parole” (Matter of Mickens v Reilly, Sup Ct, Nassau County, Dec. 20, 2007, Gulotta, J., index No. 485N99; Levine affirmation, exhibit E). Rejecting respondent’s argument that claimant’s only option was to withdraw his guilty plea and proceed de novo, Justice Gulotta directed that he be released from all custody relating to PRS and the warrant for violating its terms.
The Supreme Court decision on which claimant relies is binding on this court under the principles of res judicata (see Williams v State of New York, 8 NY2d 886 [1960], affg 9 AD2d 415, 417 [1959] [“The order in the habeas corpus proceeding, from which no appeal was taken, constituted a conclusive adjudication that the order of commitment was void and that the imprisonment thereunder was illegal”]; Whitree v State of New York, 56 Misc 2d 693, 699 [Ct Cl 1968] [“the issues determined when a writ of habeas corpus is granted are res judicata in any subsequent action arising out of the same factual situation”]). Moreover, Justice Gulotta’s holding is in accord with well established law on this issue, as discussed below. The Supreme Court decision does not, however, address or decide the question *194 of whether the unlawful administrative imposition of PRS by DOCS can give rise to an action for money damages against the State. This issue must be resolved in order for claimant to establish that he is entitled to summary judgment in this action.
Background
Penal Law § 70.45 was enacted in 1998 as part of “Jenna’s Law” (L 1998, ch 1, § 15), and the first sentence of the original version of the statute, which was in effect when claimant was sentenced, read as follows: “Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision.” (Penal Law § 70.45 [former (1)].) Initially, there was a significant degree of confusion and inconsistency regarding when, how, and by whom the PRS term was to be imposed. “[Mjany, if not most, sentencing courts assumed for several years that a separate pronouncement of a term of PRS was not required” and often there would be no mention of PRS when the parties were engaged in plea discussions (People v Rogers, 21 Misc 3d 1131[A], 2008 NY Slip Op 52313[U], *2 [Sup Ct, Kings County 2008]). Frequently, the mandatory PRS was added “administratively” after sentencing, either by nonjudicial court personnel or by DOCS. It has been estimated by DOCS that the administrative imposition of PRS may have occurred in “tens of thousands” of cases during this time period (State of New York v Myers, 22 Misc 3d 809, 811 [Sup Ct, Albany County 2008]).
A series of Court of Appeals decisions and, ultimately, an amendment to Penal Law § 70.45 resolved any question about when and by whom the mandatory PRS must be imposed. Administrative imposition of the mandatory PRS was first determined to be unlawful, at least with respect to individuals who were sentenced following a guilty plea, in People v Catu (4 NY3d 242, 245 [2005] [“a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action”]). Subsequently, in Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358, 362 [2008]), the Court of Appeals held that only a sentencing judge is authorized to pronounce the PRS component of a defendant’s sentence and, consequently, that the power to add a term of PRS to an individual’s sentence “lies beyond DOCS’s limited jurisdiction over inmates and correctional institutions.” Although the criminal defendant in Garner had been also sentenced following a *195 guilty plea, this holding is understood to apply with equal force to a plea agreement or a trial verdict.[2] More recently, in People v Collado (11 NY3d 888, 889 [2008], modfg 47 AD3d 547 [1st Dept 2008]), the Court of Appeals held that the requisite term of PRS could not be lawfully imposed by references contained in court documents (the worksheet and commitment sheet) “[b]ecause Supreme Court failed to pronounce the term of defendant’s mandatory postrelease supervision in his presence.”
In Garner and People v Sparber (10 NY3d 457 [2008]), which were issued the same day, the Court of Appeals explained that the PRS mandated by Penal Law § 70.45, which was described as a “significant punishment component” of a sentence, is not automatically included when a determinate sentence is pronounced “and thus a defendant has a statutory right to have that punishment imposed by the sentencing judge” (Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d at 362-363). That statutory right is found in CPL 380.20, which provides in relevant part that “[t]he court must pronounce sentence in every case where a conviction is entered,” and in CPL 380.40 (1), which requires that “[t]he defendant must be personally present at the time sentence is pronounced.” Consequently, “the combined command of CPL 380.20 and CPL 380.40 is that the sentencing judge — and only the sentencing judge — is authorized to pronounce the PRS component of a defendant’s sentence” (10 NY3d at 362; see also People v Sparber, 10 NY3d at 469 [“These commands are unyielding”]). It should be noted that this was not new law, as both CPL provisions were enacted in 1970 (L 1970, ch 996, § 1) and codified preexisting New York law. In order to make this statutory command even more explicit, Penal Law § 70.45 (1) was subsequently amended (L 2008, ch 141, § 3) so that the statute’s first sentence now reads: “When a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article.”
Because there were so many instances in which PRS had been administratively imposed, the issue of what actions could be taken, either by authorities or by the affected individuals, *196 became the subject of significant litigation. In People v Sparber (10 NY3d 457 [2008], supra), five individuals who were still serving their original prison sentences sought to have the improperly applied PRS expunged from their sentences. While acknowledging that the procedure used to impose the terms of PRS was flawed, the Court of Appeals declined to permanently expunge this component of the individuals’ punishment, stating, “[t]he sole remedy for a procedural error such as [the court’s failure to pronounce the PRS component of the sentence] is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement” (10 NY3d at 471). In two additional cases, also involving individuals who were still incarcerated when their administratively-imposed PRS was challenged, the sentences were likewise vacated and the matters remitted to the sentencing courts for further proceedings (People v Collado, 11 NY3d 888 [2008], supra; People v Hill, 9 NY3d 189 [2007]).
It is well established in New York law that where the criminal sentence of a person who remains incarcerated lacks a mandatory element, it may be corrected without running afoul of the prohibition against double jeopardy through resentencing (Earley v Murray, 451 F3d 71, 76 [2006], supra). Within the first year after an invalid sentence is pronounced, the People may move to have the judgment vacated and the defendant resentenced (CPL 440.40). After that one-year period has elapsed, courts may not modify a lawful sentence (People v Richardson, 100 NY2d 847 [2003]), but they retain the inherent power to correct an invalid, unlawful sentence (People v Wright, 56 NY2d 613 [1982]). In Wright, the applicable law required two sentences to be served consecutively, but the judge mistakenly announced that they were to run concurrently. A DOCS clerk discovered the error and notified the prosecutor and defense counsel, who informed the court. The court, sua sponte, resentenced the defendant in accordance with the law, and this action was upheld by the Court of Appeals. (See also Correction Law § 601-a [“Return of persons erroneously sentenced for the purpose of resentence”]; Matter of Kisloff v Covington, 73 NY2d 445 [1989]; People v Minaya, 54 NY2d 360 [1981]; People v Coston, 63 AD3d 41 [2009]; People v Matthews, 306 AD2d 863 [4th Dept 2003]; People v Rickett, 171 AD2d 908 [3d Dept 1991].)
In connection with the PRS cases, however, many of the individuals had completed their determinate sentences and had been released from prison before the administratively-imposed *197 PRS was challenged, and a significant dispute arose as to whether resentencing was an option in these situations. In Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358 [2008], supra), where this had occurred, the Court of Appeals prohibited DOCS from imposing a period of PRS but it did not remand the matter for resentencing, as it had done that same day in Sparber with still incarcerated individuals. Instead, the following statement was inserted in a footnote: “Our holding here is without prejudice to any ability that either the People or DOCS may have to seek the appropriate resentencing of a defendant in the proper forum (see e.g. People v DeValle, 94 NY2d 870, 871 [2000]).” (10 NY3d at 363 n 4.)[3] State appellate decisions either made no mention of what, if anything, was to happen after the PRS term of an already-released individual was invalidated (see e.g. People ex rel. Foote v Piscotti, 51 AD3d 1407 [4th Dept 2008]; People ex rel. Gerard v Kralik, 51 AD3d 1045 [2d Dept 2008]; People ex rel. Henderson v New York State Dept. of Correctional Servs., 55 AD3d 1416 [4th Dept 2008]), or recited the language of the Garner footnote without further discussion (People ex rel. Lewis v Warden, Otis Baum Correctional Ctr., 51 AD3d 512 [1st Dept 2008]).
In the trial courts, however, a split soon developed between those justices who interpreted the footnote statement in Garner to mean that the People and/or DOCS definitely had the authority to resentence individuals even after they had been released from prison (see e.g. People ex rel. Hernandez v Superintendent, Oneida Correctional Facility, 20 Misc 3d 627 [Sup Ct, Oneida County 2008]) and those that interpreted it to mean “that the Court [of Appeals] was not prepared to reach the issue of whether it would be permissible to resentence a defendant who had already served her sentence” (People v Washington, 21 Misc 3d 349, 351 [Sup Ct, NY County 2008]). In some decisions, such as Washington (at 352) and People ex rel. Pamblanco v Warden, Rikers Is. Correctional Facility (22 Misc 3d 776, 780 [2008]), it *198 was held that where the original sentence had been completed, modification after the fact would violate both due process and the constitutional prohibition against double jeopardy since the individuals had an “expectation of finality” in the sentence originally imposed upon them.
In 2008, the Legislature resolved this issue by enacting section 601-d of the Correction Law (L 2008, ch 141, § 5). This statute establishes a mechanism for resentencing inmates who were given determinate prison sentences after the passage Penal Law § 70.45 but whose commitment orders did not contain any mention of PRS. The statute applies both to “inmates in the custody of the commissioner [of DOCS]” and to “releasees under the supervision of the division of parole,” and thus it encompasses those who have been released from prison but are still serving PRS, as well as those who remain in prison.[4]
The statute directs DOCS and the Division of Parole to identify such individuals and notify their sentencing courts about the omission in the commitment orders. The courts have a prescribed period of time in which to check their records and either issue new commitment orders, reciting that a PRS term was pronounced at the time of the original sentencing, or set a date for a resentencing hearing. Following such a hearing, the sentencing court must then issue a written decision that either resentences the individual, this time to a term that includes PRS, or states that the individual will not be resentenced.[5]
*199 The resentencing of appropriate individuals under Correction Law § 601-d has been uniformly permitted and the resultant resentencing uniformly approved (People v Lewis, 60 AD3d 425 [1st Dept 2009]; People v Williams, 59 AD3d 172 [1st Dept 2009]; People v Hernandez, 59 AD3d 180 [1st Dept 2009]; People v Thompson, 22 Misc 3d 1121[A], 2009 NY Slip Op 50213[U] [Sup Ct, Bronx County 2009]; People v Noor, 22 Misc 3d 1108[A], 2008 NY Slip Op 52612[U] [Sup Ct, Queens County 2008]; People v Peer, 22 Misc 3d 620 [Essex County Ct 2008]; People v Rogers, 21 Misc 3d 1131[A], 2008 NY Slip Op 52313[U] [2008], supra). Constitutional arguments that were held to prohibit resentencing in cases such as People v Washington (21 Misc 3d 349 [2008], supra) and People ex rel. Pamblanco v Warden, Rikers Is. Correctional Facility (22 Misc 3d 776 [2008], supra) have been considered and rejected by at least one appellate court (People v Hernandez, 59 AD3d 180, 181 [2009] [“defendant did not merely ‘expect’ to be subject to PRS; he was actually serving such a term, albeit one that was improperly imposed”]; see also People v Rogers, 21 Misc 3d 1131[A], 2008 NY Slip Op 52313[U] [2008], supra; People v Thompson, 22 Misc 3d 1121[A], 2009 NY Slip Op 50213[U] [2009]).
It is against this background that this court considers the question of whether these individuals may recover money damages for the time they spent serving their administratively-imposed term of PRS. When provided with sufficient factual information on which to base a conclusion,[6] the Judges of this court have reached different conclusions on that question with respect to a cause of action for false imprisonment.
*200 Viability of Claims for Money Damages
There appears to be agreement that, in the situation presented by these cases, there can be no viable cause of action based on allegations of constitutional violations. The Court of Claims does not have jurisdiction to hear civil actions for alleged violations of the United States Constitution, as a state is not a “person” amenable to suit under 42 USC § 1983 (Will v Michigan Dept. of State Police, 491 US 58 [1989]; Matter of Thomas v New York Temporary State Commn. on Regulation of Lobbying, 83 AD2d 723 [3d Dept 1981], affd 56 NY2d 656 [1982]). Furthermore, a tort action based on the State Constitution does not lie where the alleged constitutional tort is analogous “to an existing common-law tort for which there are adequate alternate remedies” (Augat v State of New York, 244 AD2d 835, 837 [3d Dept 1997], lv denied 91 NY2d 814 [1998]; see also Lyles v State of New York, 194 Misc 2d 32, 36 [Ct Cl 2002], affd 2 AD3d 694 [2d Dept 2003], affd 3 NY3d 396 [2004]; Remley v State of New York, 174 Misc 2d 523, 526 [Ct Cl 1997]). Individuals, such as claimant, who allege that they were subjected to unlawful confinement because DOCS unlawfully imposed PRS on them can present their claims in the context of common-law actions for false imprisonment.
To recover money damages in an action for false imprisonment, a claimant must establish that: (1) the defendant intended to and did confine him; (2) that he was conscious of the confinement; (3) that he did not consent to the confinement; and (4) that the confinement was not otherwise privileged (Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]). An action by a government official is said to be “privileged” when it is made pursuant to lawful authority (Collins v Brown, 129 AD2d 902, 904 [3d Dept 1987]) or performed “under color of law or regulation” (Gittens v State of New York, 132 Misc 2d 399, 402 [Ct Cl 1986] [“the more restrictive confinement was privileged to the extent that it was under color of law or regulation, specifically in accordance with regulations”]; see also Lee v State of New York, 124 AD2d 305 [3d Dept 1986]; Gayle v State of New York, 135 Misc 2d 570 [Ct Cl 1987]).
In two Court of Claims decisions, it has been held that claims alleging false imprisonment in these situations must fail since “any confinement arising from an improperly imposed period of PRS is privileged . . . because it was required by § 70.45 (1) of the Penal Law” (Collins v State of New York, Ct Cl, June 16,
*201 2008, Collins, J., UID No. 2008-015-050; accord Frederick v State of New York, 23 Misc 3d 1008 [Ct Cl 2009]). A slightly different position was taken in Hallett v State of New York (Ct Cl, Mar. 3, 2009, DeBow, J., claim No. 115220, UID No. 2009-038-519, motion No. M-75701); Williams v State of New York (Ct Cl, Mar. 26, 2009, DeBow, J., claim No. 115397, UID No. 2009-038-530, motion No. M-75704); and Dozier v State of New York (Ct Cl, Mar. 30, 2009, DeBow, J., claim No. 115587, UID No. 2009-038-532, motion No. M-75700), where it was held that defendant must “demonstrate that DOCS was acting in an objectively reasonable manner when it concluded that it could administratively add the period of PRS to claimant’s sentence or that the PRS term was automatically included therein” in order to successfully invoke the defense of privilege.
The immunity that is granted to certain governmental actions has also been cited as a reason for rejecting these claims. Absolute immunity protects actions taken by judges when they are performing their judicial functions and by other government officials when they are lawfully carrying out duties that are “classically judicial” (e.g. “decisions which involve the officials’ expertise, an application of law and an exercise of their judgment”) (Tarter v State of New York, 68 NY2d 511, 518-519 [1986]; see also Arteaga v State of New York, 72 NY2d 212, 216 [1988]; Tango v Tulevech, 61 NY2d 34 [1983]). Qualified, rather than absolute, immunity shields other government officials from liability when, in the course of carrying out their official duties, they perform actions “requiring expert judgment or the exercise of discretion” (Arteaga v State of New York at 216; Tarter v State of New York, supra; Tango v Tulevech, supra). The State or other government entity can be held liable for actions falling in this category only if it is determined that the officials lacked a reasonable basis for their decision, failed to engage in a rational decision-making process before taking action, or violated constitutional or statutory rights of which reasonable persons would be aware (Haddock v City of New York, 75 NY2d 478 [1990]; Alex LL. v Department of Social Servs. of Albany County, 60 AD3d 199 [3d Dept 2009]; Schittino v State of New York, 262 AD2d 824 [3d Dept 1999], lv denied 94 NY2d 752 [1999]).
In Vazquez v State of New York (23 Misc 3d 1101[A], 2009 NY Slip Op 50527[U] [Ct Cl 2009]) and Nazario v State of New York (24 Misc 3d 443 [Ct Cl 2009]), DOCS’ interpretation of Penal Law § 70.45 as mandating PRS in certain cases and its decision *202 to administratively apply PRS to those individuals was held to be a “quasi-judicial function for which DOCS is entitled to absolute immunity” (2009 NY Slip Op 50527[U], *9; 24 Misc 3d at 459). In the alternative, these decisions hold that if DOCS’ actions were discretionary, they would still be protected because the determination of what action to take “in carrying out both the requirements of the statute and its own official duties” required DOCS to apply its judgment and discretion, therefore being entitled to qualified immunity (2009 NY Slip Op 50527[U], *9-10; 24 Misc 3d at 459).
Counsel for defendant has drawn the court’s attention to two recent decisions from federal district courts in which it was held that actions for money damages (brought by way of actions commenced under 42 USC § 1983) must fail because DOCS’ actions were protected by qualified immunity. In Scott v Fischer (2009 WL 928195, 2009 US Dist LEXIS 35027 [SD NY 2009]) and Sinclair v Goord (ND NY, 2009, No. 9:07-CV-1317 [LEK/ RFT]), the judges concluded that at the time PRS was administratively imposed on each of the plaintiffs (2002 and 2004, i.e., prior to the 2006 decision in Earley v Murray, 451 F3d 71 [2006], supra), then-existing law provided a reasonable basis for DOCS officials to conclude that they had legal authority to impose PRS. In support of this conclusion, the courts refer to the language of Penal Law § 70.45 (discussed above) and to a number of lower court decisions which, with one exception, reference PRS but do not discuss DOCS’ role in imposing it.[7] Sinclair and Scott give no consideration to the statutory mandates *203 of CPL 380.20 and 380.40 and, furthermore, overlook an even greater number of decisions from the same time period in which a sentencing court’s failure to impose PRS was held to be unlawful.[8]
This court is unable to view DOCS’ actions as being either privileged or entitled to immunity from liability. DOCS simply did not have legal jurisdiction or lawful authority to impose any component of sentences on convicted criminals because, as the Court of Appeals emphasized in Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358 [2008], supra) and People v Sparber (10 NY3d 457 [2008], supra), there were existing, unequivocal statutes that authorized and required courts, and only courts, to carry out that function and to do so in the presence of the defendant (CPL 380.20, 380.40). It is reasonable to assume that DOCS was aware of these statutes and of the well established principle of New York law that sentencing is a judicial responsibility that cannot be delegated (see e.g. People v Felix, 58 NY2d 156 [1983], appeal dismissed 464 US 802 [1983]; People v Fuller, 57 NY2d 152, 158-159 [1982]; People
*204 v Selikoff, 35 NY2d 227 [1974], cert denied 419 US 1122 [1975]; People v Denue, 275 AD2d 863 [3d Dept 2000]). Also, it is not reasonable to assume that DOCS could rely on earlier case law to conclude that it had any legal authority to impose PRS (see nn 8, 9).
If DOCS had no lawful authority to pronounce any portion of the sentence on these individuals, then its action in doing so cannot be considered privileged (i.e. as being carried out “pursuant to lawful authority” or “under color of law or regulation”). There is an important distinction between acts performed in excess of the actor’s jurisdiction and those performed in the clear absence of any jurisdiction or authority: “[t]he former is privileged, the latter is not” (Sassower v Finnerty, 96 AD2d 585, 586 [2d Dept 1983], appeal dismissed 61 NY2d 756 [1984]; see also Harley v State of New York, 186 AD2d 324 [3d Dept 1992]; Lombardoni v Boccaccio, 121 AD2d 828, 829 [3d Dept 1986]; La Pier v Deyo, 100 AD2d 710 [3d Dept 1984]).[9] While it is true that these individuals were statutorily required to serve a term of PRS, DOCS (or, indeed, any entity other than the sentencing court) was statutorily prohibited from imposing such a requirement on them. In other words, although the sentence may have been privileged, DOCS’ imposition of the sentence was not.
For the same reason, DOCS’ action cannot be viewed as being entitled to either absolute or qualified immunity. Where a public officer acts “in the clear absence of all jurisdiction or without a colorable claim of authority, there is plainly no entitlement to absolute immunity, even if the underlying acts are prosecutorial or quasi-judicial in nature” (Della Pietra v State of New York, 71 NY2d 792, 796 [1988]; see also Arteaga v State of New York, 72 NY2d at 216; Falkoff v Donovan, 245 AD2d 541 [2d Dept 1997]). As the Court of Appeals’ rulings establish without equivocation, at all times relevant to these claims, only courts were authorized to pronounce sentences and they were required to do so in the presence of the criminal defendant (CPL 380.20,
*205 380.40). Consequently, since DOCS lacked jurisdiction or any colorable claim of authority to impose a term of PRS, it could not have been carrying out either a quasi-judicial or discretionary duty when it did so.
These same conclusions with respect to privilege and immunity were reached in Donald v State of New York (24 Mise 3d 329 [Ct Cl 2009]). The State’s argument that DOCS’ action was privileged was rejected because there was no evidence that it was made in response to any valid judicial sentence or order and because defendant was unable to identify language in any statute, regulation, or legislative memorandum “which required or permitted DOCS to impose a period of PRS on claimant” (id. at 332). The argument that DOCS could claim immunity for these actions was also rejected (id.).[10] In Donald, the court awarded summary judgment to claimant on the issue of liability because DOCS’ imposition of PRS was “unlawful, beyond its jurisdiction and a legal nullity” and therefore could not be considered privileged (id. at 336). The issue of damages was not addressed.[11]
In the instant case, because DOCS’ imposition of the PRS term is considered neither privileged nor protected by immunity, liability on the part of the State is possible. However, in the view of this court, there must also be an allegation and ultimately proof that DOCS’ action actually caused injury to claimant, caused confinement that was not otherwise privileged, before the elements of false imprisonment can be established.
*206 Causal Connection
It is a fundamental principle of tort law that a right to recover damages arises only when the defendant breaches a duty it owes to the injured party and that breach of duty causes the injury for which compensation is sought. “There is no liability in tort unless the defendant’s wrongful conduct is a cause in fact of plaintiffs injury” (Schuster v City of New York, 5 NY2d 75, 98 [1958, Froessel, J., dissenting]; see also Jones v U.S. Healthcare, 282 AD2d 347, 359 [1st Dept 2001, Rubin, J., dissenting] [“The causal connection between the wrongful conduct and the resulting damage (is) essential throughout the law of torts” (quoting Prosser and Keeton, Torts § 108, at 714 [4th ed])]; Restatement [Third] of Torts: Liability for Physical Harm [Proposed Final Draft No. 1] § 26 [“Tortious conduct must be a factual cause of physical harm for liability to be imposed. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct”]).
The need for such a causal connection between DOCS’ wrongful act and the former prisoners’ confinement was recognized in Nazario v State of New York (24 Misc 3d 443, 460 [2009], supra) and Vazquez v State of New York (23 Misc 3d 1101[A], 2009 NY Slip Op 50527[U], *10 [2009], supra):[12]
“[A] 11 that is alleged is that the claimant was made subject to PRS, which the facts indicate was consistent with the statutory requirement applicable to determinate sentencing. Under these circumstances it cannot be said that the conduct complained of was tortious or the cause in fact of the claimant’s injuries.”
This statement sheds light on one of the difficulties, or logical stumbling blocks, in these cases. There is, in all of the decisions, some recognition of an underlying paradox: DOCS’ admittedly wrongful action had the same impact on the claimants as the lawful application of the sentencing statute would have imposed. *207 That does not make what DOCS did lawful or privileged, but it does raise questions about whether these claimants can recover damages. Claimants’ views appear to be that, since their liberty and freedom of movement was restrained by PRS which was imposed by DOCS, a finding that DOCS acted unlawfully translates automatically into their right to recover for the entire period of time they served under PRS. To understand the actual impact of DOCS’ improper action, however, one must consider what would have occurred if the agency had not acted improperly and outside its authority.
The claimants in these cases evidently assume that if DOCS had not acted improperly, they would have left prison at the end of their determinate sentence with no obligation to serve any period of PRS. In fact, because DOCS was undisputably aware of the defect in these prisoners’ commitment orders, such a result is entirely unrealistic.
That DOCS was aware of the defect in the original sentence and commitment order is established by the fact that they took some action, albeit unlawful, to correct the defect. There were lawful alternatives available to the agency, specifically giving notice of the problem to the court and/or the prosecutor and defense attorney (see e.g. People v Wright, 56 NY2d 613 [1982], supra). Electing this lawful alternative would have resulted in these individuals being properly resentenced by a court prior to their release from prison, which occurred whenever courts were made aware of the defect while the individual was still incarcerated (see e.g. People v Sparber, 10 NY3d 457 [2008], supra). In other words, once DOCS was aware of the defect, its duty was to take some corrective action rather than release the individual outright. If it had taken the proper corrective action, rather than acting unlawfully outside its authority, these claimants would have been resentenced while still in prison. They would not have been allowed to leave prison without an obligation to serve the mandated term of PRS.
Proper action on the part of DOCS would have resulted in resentencing by a court, which would have been privileged. Consequently, a claim for false imprisonment may be maintained only when, and to the extent that, a claimant alleges and proves that some portion of the time he served under PRS was caused solely by DOCS’ imposition of a longer term of PRS than a court would have imposed. To determine if there was such compensable injury, each case must be considered on its own facts.
In most instances, a cause of action for false imprisonment cannot be maintained because DOCS’ action, while unlawful, *208 did not in fact cause any injury to the claimant. Individuals who were still incarcerated when their administratively-imposed PRS was challenged suffered no injury, because they were either allowed to withdraw their guilty pleas or were properly resentenced. Individuals who were released from prison subject to the precise term of PRS that was required by Penal Law § 70.45 were also unaffected, because they would have served the same amount of time under such confinement if they had been sentenced by a court. Some individuals, in fact, actually experienced a benefit because of DOCS’ error, serving a shorter term of PRS than they would have otherwise. If they had been released from prison before challenging the administratively-imposed PRS and won release from PRS through such a challenge, they could not be resentenced either under the courts’ inherent power to correct a mistaken sentence or, later, pursuant to Correction Law § 601-d. They would not have had grounds for bringing such a challenge if DOCS had acted properly and they had been resentenced to PRS by a court.
It may be possible, however, for a small subset of individual claimants to prove that DOCS’ action caused at least some period of their confinement. A claimant may recover for false imprisonment if he or she is able to prove that DOCS imposed a longer term of PRS than the sentencing court could, or would, have imposed. For example, if the statute required a PRS term of three years but DOCS imposed a five-year term, then the State would be liable for false imprisonment for any period of time the individual served under PRS beyond the third year. Similarly, an individual who was convicted of a crime for which a judge had discretion to choose within a range of PRS terms (for example, between two and four years) might be able to prove that DOCS imposed a PRS term that was longer than the particular judge would have imposed (for example, by proving that the particular judge always imposed the minimum term). If facts such as these can be proved, the individual will have a claim to recover for any additional time served. In short, it is the facts of each specific case that will determine whether DOCS’ action in imposing the term of PRS caused actual injury to the individual, and only where such injury is established will there be a right to recover.
Turning to the facts of the instant action, the court concludes that claimant has not pleaded and will be unable to prove a viable claim for false imprisonment. The crime for which he was convicted did not fall within one of the statutory exceptions *209 that existed in 1999, and consequently the law mandated that his original determinate sentence include a PRS term of five years. That is the length of the term that DOCS imposed on him. The fact that claimant served PRS longer than five years is attributable to his own actions and subsequent parole violations, not to any action or inaction on the part of DOCS. Ultimately, claimant appears to be one of those individuals who actually benefitted from DOCS’ unlawful act, because he was released from his confinement approximately four months earlier than he would have been if the PRS term had been properly pronounced by a court.
In the instant case, therefore, DOCS’ imposition of a five-year term of PRS on claimant was unlawful, but that wrongful act was not the cause of any of the confinement he experienced while serving PRS. Claimant has not alleged any facts that, if proved, would support the conclusion that DOCS’ action alone caused him specific injury. Consequently, he will be unable to prove the elements of a claim for false imprisonment, and defendant is entitled to summary judgment dismissing the claim.
Claimant’s motion for summary judgment on the issue of liability is denied. Defendant’s cross motion for summary judgment is granted. Claim No. 114719 is dismissed.

. Defendant also argues that Penal Law § 70.45 does not create a private right of action on behalf of individuals who would be subject to the mandatory PRS. The presence or absence of a statutory private right of action, however, has no bearing on whether a litigant continues to have a traditional, common-law cause of action (such as an action for false imprisonment) arising from the same factual situation, unless the statute specifically abrogates the common-law remedy (see generally Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 331 [1983]; Llanos v Shell Oil Co., 55 AD3d 796, 798-799 [2d Dept 2008]).

. Somewhat earlier, the Second Circuit held in Earley v Murray (451 F3d 71, 72, 76 [2d Cir 2006], reh denied 462 F3d 147 [2006]) that the practice of administratively imposing PRS violated a criminal defendant’s federal due process right to be present and to hear the sentencing court pronounce the sentence.

. Although DeValle stands for the proposition that a trial court has inherent power to correct an illegal sentence, it does not actually provide guidance on whether the People or DOCS had “any ability” to seek resentencing of someone who had already completed his or her prison term and had been released. In DeValle, as in Sparber, Hill, and Collado, the person whose sentence was being corrected (for defects unrelated to PRS) was still in prison and serving his original prison sentence when the matter came before the court (see People ex rel. Pamblanco v Warden, Rikers Is. Correctional Facility, 22 Misc 3d 776, 779 [Sup Ct, Bronx County 2008] [“the defendant in DeValle had just begun serving his sentence when the judge corrected it to conform to the mandates of the Criminal Procedure Law”]).

. Excluded from the reach of this statute are individuals who have already completed both their original prison sentence and any subsequent term of PRS, since they are no longer “releasees” under the supervision of the Division of Parole. For the same reason, individuals who successfully challenged their PRS and obtained their release from all confinement by way of a habeas corpus or other proceeding are not impacted by this statute, finally giving meaning to the Garner footnote. A third group that is excluded from the statute are those on whom PRS was imposed “administratively” by nonjudicial court personnel, rather than by DOCS. Although the Court of Appeals recently confirmed that this form of nonjudicial imposition of PRS is also unlawful (People v Collado, 11 NY3d 888 [2008], supra), these individuals cannot be resentenced under Correction Law § 601-d because their commitment orders referenced PRS.

. Although the sentencing courts did not have the option of refusing to add the required term of PRS when they originally imposed a determinate sentence, Correction Law § 601-d and Penal Law § 70.85 (which is captioned “Transitional exception to determinate sentencing laws”) permit omission of PRS from the sentences of certain designated persons, but only if the district attorney consents. The reason for making this limited exception relates to the *199 right of individuals who were sentenced after pleading guilty to have their plea vacated (see People v Hill, 9 NY3d 189 [2007], supra). To avoid the “chaos which would result from having a significant number of these convictions set aside,” the court and the People can elect in these circumstances to retain the original sentence which contained no judicial reference to PRS (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.85, at 361 [2009 ed]). The constitutionality of Penal Law § 70.85 has been questioned (People v Boyd, 12 NY3d 390 [2009]).

. In several instances involving motions for permission to file a late claim, the courts have found it impossible to weigh the apparent merit of such claims in the absence of specific allegations of wrongdoing or relevant supporting information and documentation, such as sentencing minutes and commitment orders (see e.g. Vazquez v State of New York, 23 Misc 3d 1101[A], 2009 NY Slip Op 50527[U] [Ct Cl 2009, Collins, J.] [no allegation that the commitment order was not valid on its face]; Cruz v State of New York, Ct Cl, Jan. 2, 2009, Fitzpatrick, J., UID No. 2008-018-642, motion Nos. M-75229, M-75274; Carnell v State of New York, Ct Cl, July 14, 2008, Hard, J., UID No. 2008-032-107, motion No. M-74569; Collins v State of New York, Ct Cl, Dec. 31, 2007, Coffins, J., UID No. 2007-015-252, motion No. M-73799).

. The cases cited in the federal district court decisions are the following: People v Thomas (35 AD3d 192 [1st Dept 2006] [PRS was imposed by court document, not by DOCS], mod and remanded sub nom. People v Sparber, 10 NY3d 457 [2008]); People v Melio (304 AD2d 247 [2d Dept 2003] [issue of whether defendant would have pleaded guilty if informed about PRS raises question of fact]); People v Crump (302 AD2d 901 [4th Dept 2003] [court was not required to specify length of PRS and issue of whether guilty plea could be withdrawn was not preserved], overruled by People ex rel. Burch v Goord, 48 AD3d 1306 [4th Dept 2008]); People v Lindsey (302 AD2d 128 [3d Dept 2003] [adequacy of plea allocution was not preserved for appeal]); People v Bloom (269 AD2d 838 [4th Dept 2000] [length of PRS was established by statute and therefore did not have to be stated by court]); People v White (296 AD2d 867 [4th Dept 2002] [PRS is mandatory and automatically included in the sentence]). The exception was Matter of Gamer v New York State Dept. of Correctional Servs. (39 AD3d 1019 [3d Dept 2007], revd 10 NY3d 358 [2008]), in which the lower court held that prohibition did not lie because DOCS had not been performing a judicial function when “enforcing” the statutory mandate. Gamer was immediately appealed and reversed by the Court of Appeals (see also Matter of Deal v Goord, 8 AD3d 769 [3d Dept 2004], abrogated by Matter of Dreher v Goord, 46 AD3d 1261 [3d Dept 2007]).

. These decisions include the following: People v Catu (4 NY3d 242 [2005], supra); People v Sparber (34 AD3d 265 [1st Dept 2006], mod 10 NY3d 457 [2008], supra); People v Bundy (16 AD3d 834 [3d Dept 2005]); People v Boyce (12 AD3d 728 [3d Dept 2004]); People v Pacheco (8 AD3d 822 [3d Dept 2004]); People v Hamilton (6 AD3d 979 [3d Dept 2004]); People v Grose (2 AD3d 1211 [3d Dept 2003]); People v Melio (304 AD2d 247 [2d Dept 2003]); People v Baker (301 AD2d 868 [3d Dept 2003]); People v Keyes (300 AD2d 909 [3d Dept 2002]); People v Harler (296 AD2d 712 [3d Dept 2002]); People v Schenk (294 AD2d 914 [4th Dept 2002]); People v Brown (294 AD2d 751 [3d Dept 2002]); People v Jachimowicz (292 AD2d 688 [3d Dept 2002]); People v Cooney (290 AD2d 727 [3d Dept 2002]); People v Goss (286 AD2d 180 [3d Dept 2001]); People ex rel. Lewis v Warden, Otis Baum Correctional Ctr. (14 Misc 3d 468 [Sup Ct, Bronx County 2006]); Matter of Waters v Dennison (13 Misc 3d 1105 [Sup Ct, Bronx County 2006]); People v Keile (13 MisC 3d 1204[A], 2006 NY Slip Op 51684[U] [Sup Ct, NY County 2006]); People v Owens (192 Misc 2d 101 [Sup Ct, Richmond County 2002]); and People v Ammarito (2001 NY Slip Op 40207[U] [Sup Ct, Bronx County 2001]).
As early as 2001, in People v Alcock (188 Misc 2d 284, 287 [Sup Ct, Kings County 2001]), the court observed,
“New York’s postrelease supervision is almost identical to what the Federal Government terms ‘supervised release’ or ‘special parole’ or what some States call ‘mandatory parole.’ The United States Courts of Appeals have unanimously ruled that supervised release or special parole is a direct consequence of a guilty plea and that a court must advise a defendant of these direct consequences at the time of a plea.”
The decision further noted that all state courts in which the issue had been addressed had ruled that “a court’s failure to advise a defendant of ‘mandatory parole’ is reversible error.” (Id. at 288.)

. One statement in the Garner decision contains language that could he read as suggesting that DOCS’ action was “in excess” of its jurisdiction. The full statement, however, makes it clear that the term “excess” was being used to indicate that something was entirely “outside” DOCS’ lawful jurisdiction: “Second, this act was in excess of DOCS’s jurisdiction; indeed, such action was solely within the province of the sentencing judge” (10 NY3d at 362 [emphasis added]). In other words, as stated elsewhere in the same paragraph, the only official authorized to pronounce the PRS component of a defendant’s sentence is the sentencing judge. Consequently, DOCS lacked any jurisdiction or authority to perform the act.

. Scott v Fischer (2009 WL 928195, *7 n 3, 2009 US Dist LEXIS 35027, *20-21 n 3) distinguished Donald by stating that the defendant in Donald, DOCS, could never be protected by qualified immunity, a statement that is patently incorrect under New York law. Donald was also criticized because the decision “fails to appreciate the time line of the various rulings.” (2009 WL 928195, *7 n 3, 2009 US Dist LEXIS 35027, *21 n 3.) Those rulings were not on point (see n 8) and ignored existing statutes and case law (see n 9).

. In Donald, the court stated that claimant must still prove the number of days he was impermissibly confined, the manner in which he was confined, and the damages he incurred as a result of such confinement (24 Misc 3d at 343). There was no further discussion of the issue of damages, because the facts of that claimant’s postrelease status are rather unique and complicated: DOCS had imposed a three-year term of PRS, although then-existing Penal Law § 70.45 (2) authorized a term of not less than U/z years or more than three years. While serving the PRS, the claimant was arrested and convicted of another crime, and at the sentencing for that second conviction the time remaining on his administratively-imposed PRS was added to the new indeterminate sentence. A subsequent arrest and incarceration for parole violation caused additional adjustment to his scheduled release date.

. This statement was made in connection with a discussion of whether defendant could be liable in these cases for ministerial negligence, something that is not protected by absolute or qualified immunity and which can result in the imposition of liability “if it is otherwise tortious and not justifiable pursuant to statutory command” (Tango v Tulevech, 61 NY2d 34, 40 [1983]). It is difficult to see how DOCS’ action in infringing on the exclusive province of the judiciary in order to impose a component of criminal sentences can be considered ministerial in nature, i.e., something that “envisions direct adherence to a governing rule or standard with a compulsory result” (id. at 41). Nor was carrying out such an action any part of DOCS’ lawful duties.