OPINION OF THE COURT
Donald J. Corbett, Jr., J.
Claimants herein seek to recover damages from the State of New York for their allegedly wrongful, unjust and/or illegal confinement in their cells (keeplock) related to disciplinary action initiated pursuant to the Rules and Regulations of the Department of Correctional Services (7 NYCRR part 250 et seq.).
The claims herein fall within three distinct factual situations, each of which provoke essentially similar analysis. Situation I, encompassing the claim of Darius Gittens, concerns a prison inmate who had been keeplocked pursuant to 7 NYCRR 251-1.6 (a), and who thereafter on the disposition resulting from his disciplinary hearing (7 NYCRR part 253) had the charges against him dismissed and was released to the general population. This claimant was keeplocked for a total of five days and seeks damages for what he characterizes as false imprisonment and malicious prosecution. Situation II, encompassing the claims of Timothy Anderson, Jerome Adams and Vincent Lahey, concerns inmates who were keeplocked pursuant to 7 NYCRR 251-1.6 (a), who thereafter had various penalties imposed upon them after their disciplinary hearings (7 NYCRR part 253) and who, after exhausting administrative remedies including unsuccessful appeals at Superintendent’s hearings (7 NYCRR part 254), commenced proceedings pursuant to CPLR article 78 in the Supreme Court, whose order nullified the hearings, expunged from the inmates’ records references to the said disciplinary proceedings, and restored certain lost privileges such as "good time” credit. These inmates bring, claims for false imprisonment or wrongful confinement and malicious prosecution, and seek damages, inter alia, for lost wages and incentive bonuses, lost work assign- *401 merits, loss of certain exercise periods,[1] and cruel and inhuman punishment. Situation III, set forth by Carlos Pizarro, concerns an inmate who was keeplocked pursuant to 7 NYCRR 251-1.6 (a) and had a penalty imposed after a disciplinary hearing (7 NYCRR part 253) consisting, inter alia, of a total of 10 days in keeplock. Claimant contends that he remained in keeplock for 19 days, that is, nine days more than the penalty imposed. His claim alleges false imprisonment for his wrongful confinement of these nine days, without disputing the first 10 days in keeplock status.
The State of New York, in lieu of an answer, moves the court to dismiss each claim herein pursuant to CPLR 3211 (a) (2) and (7), on the ground that the defendant has not waived its sovereign immunity regarding its governmental function to administer its correctional facilities and upon the further ground that an inmate incarcerated in a State correctional facility has no cause of action, in the absence of intentional, malicious and/or illegitimate actions or conditions which are "barbarous” or "shocking to the conscience”, for the choice of his place of confinement.
The gravamen of these claims whether couched in terms of false imprisonment, wrongful confinement, segregated confinement, or other synonymic expressions,[2] relates to confinement in keeplock and not to a special housing unit (7 NYCRR 300.2 [b]), or a segregation unit (7 NYCRR 300.2 [c]). There has been significant debate as to the relative restrictiveness of these confinements, with some courts urging that confinement in a segregated cell does not constitute cruel and unusual punishment (Wilkinson v Skinner, 34 NY2d 53, 59) and other courts contending that keeplock, while milder, is not significantly different from other forms of punishment which constitute substantial deprivation (McKinnon v Patterson, 568 F2d 930, 936-938), or even theorizing that keeplock could be more confining than special housing if accompanied with the loss of *402 shower, exercise and other privileges (Powell v Ward, 487 F Supp 917, 925, mod 643 F2d 924, cert denied 454 US 832).
In each instance herein the inmates were confined to their own cells for short periods of time. All confinements, however, were in full compliance with the rules and regulations governing implementation of standards of inmate behavior (7 NYCRR parts 250-254).[3] In each claim the claimant was given prompt and timely notice of the purported misbehaviors; each was keeplocked before his hearing in accordance with 7 NYCRR 251-1.6 (a) (Matter of Bowe v Smith, 119 Misc 2d 453, 455; cf. Matter of Jermosen v Smith, 66 NY2d 1024); each was given a timely disciplinary hearing (7 NYCRR 251-5.1; see, Powell v Ward, 392 F Supp 628, mod 542 F2d 101) and in situations I and II the charges against the inmate were either dismissed at the disciplinary hearing or in Supreme Court because the written misbehavior report did not sustain the charge, whereupon the disciplinary proceeding was nullified and the misbehavior report (7 NYCRR 251-3.1) expunged, but with no reason therefor given. (See, e.g., Matter of Bradley v Coughlin, 115 Misc 2d 373, 376.)
FALSE IMPRISONMENT
All claimants herein have denominated their claims as ones which sound in false imprisonment and recite the requisite elements that: (1) the defendant intended to confine them; (2) the claimants were conscious of the confinement; (3) the claimants did not consent to the confinement and (4) the confinement was not otherwise privileged. (Broughton v State of New York, 37 NY2d 451, 456, cert denied sub nom. Schanbarger v Kellogg, 423 US 929.) Most troublesome is the fourth element, that is, that the confinement was not otherwise privileged.
It can be said that the more restrictive confinement was privileged to the extent that it was under color of law or regulation, specifically in accordance with regulations (7 NYCRR 251-1.6 [a]).[4] And certain personal freedoms and con *403 veniences are inherently sacrificed when a loss of liberty is occasioned by a lawful incarceration (cf. Cooper v Morin, 49 NY2d 69, 84-85 [Gabrielli, J., dissenting]).
Wilkinson v Skinner (supra) is not to be read to the contrary, as the court easily dismissed any notion that the conditions of confinement there (in solitary confinement) could be considered so "barbarous” or "shocking to the conscience” as to fall within the aegis of United States Constitution 8th Amendment proscribing cruel and unusual punishment (supra, at p 60). Reading the instant claims with the strongest possible inferences in the claimants’ favor, I find that they fall woefully short of such actionable conditions of confinement.[5]
The plaintiff in Wilkinson (supra) succeeded because he sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process. Here the claimants, save Pizarro, were given the reasons for their confinement in keeplock, all in accordance with rules and regulation which do provide an adequate measure of due process.
In fact, it appears that the defendant has readily responded to the then existing regulatory imperfections (Wilkinson v Skinner, supra, at pp 62-63) by subsequently strengthening minimal due process requirements which corrections officials must follow in inmate disciplinary confinements (see, amendments filed June 13, 1983, particularly 7 NYCRR 251-5.1 [a]). More importantly, as the Court of Appeals cogently noted, injunctive relief should be granted more readily and will often be the only appropriate remedy (Wilkinson v Skinner, 34 NY2d, at p 62). The claims at bar amply demonstrate the availability of such remedies.
Accordingly, all claims herein which allege false imprisonment are dismissed.
*404 CIVIL RIGHTS CLAIMS UNDER SECTION 1983
In actuality, all the claims herein can be read to imply violations of due process rights under the Constitution of the United States. The Court of Claims does not have subject matter jurisdiction to hear such claims, being a court of limited statutory jurisdiction. A civil rights suit seeking monetary relief for violations of due process rights alleging the loss of Federally guaranteed liberty interests under 42 USC § 1983 can be heard in the Federal courts, which are unencumbered by such jurisdictional strictures. (Cf. Matter of Thomas v New York Temporary State Commn. on Regulation of Lobbying, 83 AD2d 723, affd 56 NY2d 656; also see, Brody v Leamy, 90 Misc 2d 1, 23; Drake v State of New York, 126 Misc 2d 309.)
The State of New York has not waived its sovereign immunity for monetary damages here (Court of Claims Act §8), even though equitable or injunctive relief through CPLR article 78 may be available in Supreme Court. And note that monetary damages are not available in civil rights claims as incidental to the primary equitable relief sought in the article 78 proceedings (CPLR 7806; Correction Law § 24 [2]; Finkelstein v Capuano, 792 F2d 275 [1986]; also see, Matter of Leisner v Bahou, 97 AD2d 860, appeal dismissed 61 NY2d 985, lv denied 62 NY2d 940, cert denied 469 US 1087; Matter of Rosario v Blum, 80 AD2d 511).
The State of New York is not a "person” amenable to suit pursuant to section 1983 (Monell v New York City Dept. of Social Servs., 436 US 658, 690, n 54, Rehnquist, J., dissenting at p 721; see also, Owen v City of Independence, 445 US 622, particularly Powell, J., dissenting at p 670, where he laments the irony of holding local government units strictly liable, while the Federal Government has not waived its sovereign immunity against such claims and the States are protected by the 11th Amend). Even assuming, arguendo, that the State is a "person” subject to suit under section 1983 (expanding the Monell umbrella which encompassed only local government units), the State remains protected by the 11th Amendment.
I thus hold that an inmate may not bring an action in the Court of Claims alleging section 1983 deprivations of civil rights and may not obtain monetary damages incidental to the relief sought in an article 78 proceeding. But, query, is the court in Finkelstein v Capuano (supra, p 279) implying that a civil rights case for "damage claims such as Finkelstein’s *405 [may] be brought in the Court of Claims”? I think not. It is clear to me that a section 1983 action seeking monetary damages against the State may be brought only in the Federal courts, although not directly against the State in its own name (cf. Kentucky v Graham, 473 US —, —, n 14, 105 S Ct 3099, 3106, n 14).
Therefore, in the absence of clear statutory authority (Court of Claims Act § 8), this court will not judicially create a cause of action answerable in the Court of Claims for money damages for these implied violations of due process rights under section 1983.[6]
MALICIOUS PROSECUTION
To the extent that claimants raise causes of action sounding in malicious prosecution, the instant claims are fatally deficient and must be dismissed because the administrative proceedings therein do not satisfy the first necessary element of that cause of action, to wit, the commencement of a criminal proceeding by the defendant against the claimant. (Broughton v State of New York, 37 NY2d, at p 457; cf. Groat v Town Bd., 73 AD2d 426.) Since neither a disciplinary nor a Superintendent’s hearing is the type of full-scale adversarial hearing which might otherwise be considered sufficiently akin to judicial proceedings to permit an action for malicious prosecution, such action will not lie by reason of the dismissal of charges at either of these administrative hearings (see, Treacy v State of New York, 131 Misc 2d 849). Similarly, a successful article 78 proceeding which reviewed such administrative determinations cannot itself be utilized to sustain a cause of action for malicious prosecution.
Nonetheless, inmates do require remedies for certain malicious or indifferent official misconduct. While it is clear that prison administrators must be afforded a broad range of discretion in initiating segregatory or other confinements, there is a narrow range of protected liberty interests retained *406 by inmates (see, Morrison v LeFevre, 592 F Supp 1052, 1070-1072, supra), actionable however only in Federal courts.[7]
Accordingly, all claims herein sounding in malicious prosecution are dismissed.
WRONGFUL EXCESSIVE CONFINEMENT
In situation III herein, the inmate remained in keeplock for nine days beyond the last day of the penalty imposed, with no reason being given other than for "investigation”. This is somewhat analogous to the unexplained and unjustified punitive segregation in Wilkinson v Skinner (supra) and the similarly unexplained five days of additional solitary confinement suffered in United States ex rel. Larkins v Oswald (510 F2d 583, 590), where the court commented on the psychological impact upon an inmate "without [his] knowing when the confinement is going to end.” To require prison officials to timely release an inmate from keeplock does not seem to impose too heavy a burden upon the State. (Cf. Wilkinson v Skinner, 34 NY2d, at p 58.)
Thus, in keeping with the State’s policies on the discipline of inmates, requiring the reasonable and fair application thereof in a consistent manner relying upon the promptness and certainty of action (see, 7 NYCRR 250.2 [a], [c], [d], [e]), an inmate’s release from an imposed disciplinary confinement in keeplock, or otherwise upon the expiration of an ordered penalty, is fully in furtherance of the governing rules and regulations. Such a release from disciplinary confinement is a purely ministerial act invoking no discretionary authority (cf. Tango v Tulevich, 61 NY2d 34), even allowing for the understandable, occasional lapse of judgment (Wilkinson v Skinner, supra, at p 62). The purported failure to have timely released claimant from keeplock, which might be termed ministerial neglect, vitiates the Rules and Regulations of the Department of Correctional Services and liability may ensue (cf. Tarter v State of New York, 113 AD2d 587, 593, lv granted 119 AD2d *407 1016; cf Matter of Garcia v LeFevre, 64 NY2d 1001, 1003).
This claim, sounding in false imprisonment, alleges a species thereof, which this court can best nomenclate as a wrongful excessive confinement. (Cf. Middleton v State of New York, 54 AD2d 450, affd 43 NY2d 678.) Therefore, the State’s motion is denied without prejudice to further legal remedies as may be deemed advisable.
Accordingly, all claims herein sounding in false imprisonment and malicious prosecution (situations I and II) cannot survive the State’s motions to dismiss. Thus the State’s motions to dismiss the claims of Gittens, Anderson, Adams, and Lahey are granted. Claimant Gittens’ motion for summary judgment is denied as moot. The State’s motion to dismiss the claim of Pizarro which alleges a species of false imprisonment, to wit, wrongful excessive confinement, is denied.

. The suspension of exercise periods and shower privileges is permitted pursuant to regulations during the first full five days of confinement, even while awaiting an initial appearance before the adjustment committee. (7 NYCRR 301.5 [d]; also see, Matter of Bowe v Smith, 119 Misc 2d 453.)

. This difficulty with terminology is not new (see, e.g., Matter of Bradley v Coughlin, 115 Misc 2d 373, 375; McKinnon v Patterson, 568 F2d 930, 937, cert denied 434 US 1087). All claimants herein appear pro se and their pleadings (while requiring at least minimal legal drafting) are held to less stringent drafting standards than those prepared by attorneys (see, Bradley v Coughlin, 671 F2d 686, 689), but are subject to the same critical judicial scrutiny in determining liability and the existence of a cause of action.

. With the exception of situation III, to be discussed separately below, no violation of any rule or regulation has been alleged or implied.

. I am not so naive as to minimize the broad latitude and discretion granted to a correction officer who needs only "reasonable grounds” to confine an inmate, nor to overlook the opportunity for abuse with such subjective standards. I am similarly not so naive as to underestimate the necessity for prompt, effective and unhesitant action by a correction officer *403 within the tinderbox of a correctional facility. As the claims at bar clearly demonstrate, administrative remedies at disciplinary or Superintendent’s hearings and judicial remedies through CPLR article 78 provide appropriate equitable relief.
However, where confinement is based upon false reports made by prison officials, then due process is denied and contaminated by the introduction of false and inculpatory evidence and damages may ensue in Federal courts. (Morrison v LeFevre, 592 F Supp 1052, 1073.)

. Furthermore, I find that an inmate’s confinement in keeplock during the maximum seven-day period preceding a disciplinary hearing (7 NYCRR 251-5.1 [a]), regardless of a disposition ultimately favorable to the inmate, does not constitute an actionable deprivation.

. Court of Claims Act § 8-b, allowing claims for unjust conviction and imprisonment, is wholly inapplicable to the claims at bar. Section 8-b contemplates claims after conviction and subsequent imprisonment for misdemeanors or felonies, where the claimant, inter alia, must prove by clear and convincing evidence that he did not commit the underlying act. No such circumstance exists herein, particularly as the claimants here have been subjected only to administrative disciplinary action and have not been accused of violating the Penal Law.

. Of course the Legislature, if it were so inclined, could further expand its recent limited waiver of sovereign immunity (Court of Claims Act § 8-b), to provide a cause of action answerable in money damages for malicious official misconduct. In this State, justice must be found in the Federal courts. If the promise of due process is to remain real, those courts must insure that the warders will not be permitted to oppress the inmates with fraudulent or malicious charges. (Morrison v LeFevre, 592 F Supp 1052, 1082.)