OPINION OF THE COURT
Edwin Margolis, J.
This claim, by an inmate of a State prison, purports to state a cause of action for wrongful confinement (i.e., false imprisonment in a prison setting) lasting two days. The claimant *571 asserts that he was placed in keeplock (i.e., confined to a cell) for nine days before he received a hearing on the misbehavior charge that had been lodged against him. If true, this would constitute a violation of the applicable rule of the Department of Correctional Services (7 NYCRR 251-5.1 [a]), which requires that when an inmate is confined pending a disciplinary proceeding, the hearing must be commenced within seven days of such confinement, except in certain circumstances not relevant here. The State has moved for an order dismissing the claim on the grounds that this court lacks subject matter jurisdiction (CPLR 3211 [a] [2]) and for failure to state a cause of action (CPLR 3211 [a] [7]).
In asserting that this court does not have jurisdiction to entertain this claim, the State relies on Arteaga v State of New York (125 AD2d 916) for the proposition that matters of prison discipline are fully protected by sovereign immunity. It is true that, prior to legislative waiver of the State’s immunity (Court of Claims Act § 8), the distinction between proprietary (i.e., businesslike) and governmental activities was crucial in determining the scope of sovereign immunity; strictly "governmental” activities — such as managing the State’s prisons— were protected by that immunity. (See generally, 2 Harper and James, Torts § 29.10, at 1617-1624; Mandelker, Netsch and Salsich, State and Local Government in a Federal System ch 7, at 428-440 [2d ed 1983]; Borchard, Government Liability in Tort, 34 Yale LJ 1 [1924-1925].)
Legislative waiver of the State’s common-law immunity, however, has led to an abandonment of the proprietary/governmental distinction. By a process of statutory provision and judicial interpretation, the scope of sovereign immunity is now defined by reference to another dichotomy: the distinction between discretionary and ministerial acts of a government. (Weiss v Fote, 7 NY2d 579, rearg denied 8 NY2d 934; see generally, 2 Harper and James, op. cit., at 1638-1646; Mandelker, Netsch and Salsich, op. cit., at 440-454; Prosser and Keeton, Torts ch 25, at 1044-1051 [5th ed].) Applying this dichotomy, Weiss v Fote (supra) and its progeny have established the general New York rule that sovereign immunity has been waived with respect to ministerial aspects of governmental acts but not with respect to discretionary aspects of governmental acts. (See, e.g., Tarter v State of New York, 68 NY2d 511, 517; Tango v Tulevech, 61 NY2d 34.)
The still-protected sphere of governmental activity generally termed "discretionary” has been described in various ways by *572 the Court of Appeals — "acts of planning government services” (Weiss v Fote, 7 NY2d 579, 587, supra); making "choice[s] between conflicting opinions of experts” (at 588); and "acts involving] the exercise of reasoned judgment which could typically produce different acceptable results” (Tango v Tulevech, 61 NY2d 34, 41, supra). In contrast, the Court of Appeals has described a ministerial governmental act as one that "envisions direct adherence to a governing rule or standard with a compulsory result” (supra, at 41), stating that "when the action is exclusively ministerial, the officer will be liable if it is otherwise tortious and not justifiable pursuant to statutory command” (at 40).
The facts of Arteaga (supra), as well as the language of that decision, demonstrate that the claimed injury could only have resulted from discretionary acts of prison officials. In that case, State inmates alleged that they had been subjected to wrongful confinement by being placed in restrictive confinement, as punishment for misbehavior, where the charges lodged against them were later dismissed on appeal. The rules and regulations of the Department of Correctional Services allow an inmate to be so confined prior to the exhaustion of his rights of appeal. Therefore, the allegedly wrongful act or acts must have been the correction officer’s decision to issue a misbehavior report, the initial Hearing Officer’s determination that punishment should be imposed, the Department’s promulgation of rules that allow an inmate to be punished before all avenues of appeal are exhausted, or a combination thereof. All of these acts fall within the protected area of discretionary State action. In its decision, the Third Department noted the degree of discretion given by the Legislature to the Department of Correctional Services "with regard to the disciplining of inmates” and stated that "[i]f the acts complained of involve the exercise of discretion or judgment of a quasi-judicial nature, the waiver of sovereign immunity does not apply” (Arteaga v State of New York, 125 AD2d 916, 917, supra).
Thus, Arteaga (supra) stands for the proposition that discretionary acts in the area of prison discipline, just as discretionary acts in other areas, are protected by sovereign immunity. However, not all claims related in some fashion to prison discipline will fall into this category, and the basic allegations of each claim must be assessed in order to determine if this court has jurisdiction to hear the claim.
In the instant case, the gravamen of the claim is that the *573 Department of Correctional Services violated its own rule limiting prehearing confinement on a single misbehavior report to seven days. No discretion or independent judgment is involved in calculating the number of days that an inmate has been confined to his cell on a single misbehavior report; the alleged wrongful act, therefore, is wholly ministerial. In a quite similar context, it has been held that when local jail officials inaccurately calculated the length of an inmate’s jail term (by failing to discharge an expired warrant), their acts were ministerial and the municipality could be found liable. (Glowinski v Braun, 105 AD2d 1153.) Accordingly, the court has jurisdiction to entertain this claim.
The second ground advanced by defendant for dismissal of this claim is that, even if unjustified restrictive confinement arising from improper ministerial acts creates a cognizable right of recovery, the specific allegations contained in this claim do not state such a cause of action. Accepting the allegations contained in the claim as true, it appears that the claimant was first placed in keeplock on September 30, 1986, at which time he was given a misbehavior report. A disciplinary hearing was held the following day and claimant received a penalty of 10 days’ keeplock. On October 6, prior to claimant’s release from keeplock on the initial charge, he was involved in a dispute with an officer when he was allowed to go to the mess hall. A second misbehavior report was issued the following day, October 7, and a hearing on the charges contained in that report took place on October 14.
It is not clear how claimant computes these dates to result in his conclusion that the second hearing occurred on the ninth day of confinement; the information contained in his pleading establishes that on each occasion he received a disciplinary hearing within the requisite seven days after being confined to his cell on a misbehavior report. Thus, on a review of the specific facts of this case, the court determines that claimant has failed to state a cause of action for wrongful confinement. The allegations demonstrate that claimant’s confinement in keeplock status was privileged since it was imposed in accordance with 7 NYCRR 251-5.1 (a). (See generally, Lee v State of New York, 124 AD2d 305; Gittens v State of New York, 132 Misc 2d 399.) Accordingly, because the specific facts alleged in the claim do not state a cause of action for wrongful confinement, defendant’s motion to dismiss pursuant to CPLR 3211 (a) (7) is granted.