OPINION OF THE COURT
Edwin Margolis, J.
This motion for permission to file a late claim, brought *752 pursuant to Court of Claims Act § 10 (6), presents an issue of first impression: whether such a motion may be served on the Attorney-General by regular mail or must be served in person or by certified mail. Defendant’s principal argument in opposition to this motion, which was served upon the State by regular mail, is that it cannot be heard because movant has not obtained jurisdiction over the person of the State. No authority is cited for the proposition that regular mail cannot suffice for bringing a section 10 (6) motion. Nevertheless, in view of the fundamental nature of the issue and its draconian implications with respect to access to this court, the question will be addressed in full.
Within the Court of Claims Act, section 11 requires that a copy of a notice of intention to file a claim or a claim be served on the Attorney-General either by personal service or by certified mail; section 11 does not speak to service of a motion brought pursuant to section 10 (6). Section 10 (6), which governs requests for permission to file late claims, states only that "application for such permission shall be made returnable at any regular or special session of the court”. Although section 10 (6) requires that a proposed claim "accompany” the application, such submission is not the same as "filing” the proposed claim with the court, which could arguably bring it within the provisions of section 11. It is well established that when a section 10 (6) motion is granted, the would-be claimant must thereafter file his claim with the court and effect proper service on the Attorney-General.
The Uniform Rules for Trial Courts provide no additional enlightenment. Rule 206.8 (b) (22 NYCRR) dealing with motion practice refers only to "service”, without specifying any particular type of service. Any additional requirements, therefore, must be found within the CPLR, as rule 206.8 (a) directs that there be "compliance with the procedures prescribed in the CPLR for the bringing of motions.” (See also, Court of Claims Act § 9 [9].)
Motions are traditionally made "on notice” (i.e., by service of papers on the adverse party’s attorney or the party himself if there is no representative) unless there is a specific statutory provision authorizing an ex parte motion. (2A Weinstein-Korn-Miller, NY Civ Prac fí 2211.04; Siegel, NY Prac § 244, at 300-301 [1978].) CPLR 2211 states that a motion is made when the moving papers are served, and, as noted in Professor Siegel’s Practice Commentaries, service is "[m]ost often” accomplished by regular mail (McKinney’s Cons Laws of NY, *753 Book 7B, CPLR C2211:4, at 31 ["Thus, a motion is made as soon as the motion papers drop from the fingers into a U.S. letter box.”].)
Unlike most motions, a motion made pursuant to Court of Claims Act § 10 (6) is made prior to, rather than in connection with, an existing action. It is therefore analogous, in some respects, to motions brought pursuant to CPLR 3102 (c) to obtain aid in bringing an action, to preserve information, or to aid in arbitration. To determine if the preaction nature of a motion requires unusual forms of service, discussions of procedure under this section were consulted.
It has been noted that, while 3102 (c) does not provide any special guidance for making a motion outside the context of a pending action, a prudent practitioner should utilize "the same means * * * as would govern service of a summons” or proceed by order to show cause. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3102:6, at 265.) However, there is no statutory requirement that the prudent course be followed. A recent discussion of the use of CPLR 3102 (c) expressly noted that "the section does not contain guidelines for its use nor does it set forth criteria for its implementation. That has been left to the courts.” (Kramer and Kramer, Medical Malpractice: Pre-Suit Discovery, NYLJ, Nov. 3, 1987, at 1, col 1, at 5, col 1.) The courts have not ruled that personal service is required for all 3102 (c) motions and, in fact, in some instances ex parte applications have been granted. (See, 3A Weinstein-Korn-Miller, NY Civ Prac II 3102.07, n 29, and cases cited therein.)
Thus, there are no heightened service requirements for preaction motions brought pursuant to CPLR 3102 (c), although the conventional wisdom is that personal service or service directed by the court (on an order to show cause) is advisable. This court can perceive no need to apply stricter requirements with respect to motions brought pursuant to Court of Claims Act § 10 (6). The ultimate safeguard, with respect to any type of preaction motion, is that the relief sought can only be granted by order of the court, and courts must always abide by the principles of due process. Judges are free to deny or adjourn a motion if it appears that anyone, particularly the potential adverse party, will be prejudiced or deprived of their due process rights by the service mechanism employed.
Section 10 (6) motions are quite numerous and commonplace *754 in this court, and the identity of the potential adverse party is always known as it must be set forth on the proposed claim. We are unaware of any section 10 (6) motion, no matter how it has been served, to which responding papers have not been submitted by the Attorney-General. In fact, it is safe to venture that if no responsive papers were received by the return date of such a motion, any Judge of this court would adjourn the matter until notification of the State (or other entity over which the court has jurisdiction) was confirmed and the defendant had an opportunity to submit opposing papers. In this context, requiring anything more than ordinary service of motion papers would be unnecessarily burdensome.
Moreover, there could be adverse due process implications if this court were to rule that regular mail service was not sufficient to apply for relief under section 10 (6). Although the State implies that service could be accomplished by certified mail service, our reading of the applicable laws indicates that the only alternative would be to require that these motions be personally served on the Attorney-General (CPLR 308). Certified mail service is provided as an optional method of effecting service only with respect to notices of intention or claims (Court of Claims Act § 11). Section 11 does not govern applications for permission to file a late claim, and the CPLR does not authorize this alternative method in lieu of personal service in other instances. In situations such as the one presented here, where the movant is an incarcerated inmate with limited financial resources, requiring personal service could be tantamount to denying relief under section 10 (6) and, thus, denying access to the court.
Accordingly, we hold that motions brought pursuant to section 10 (6) of the Court of Claims Act need only comply with the ordinary requirements for service of any motion and that the instant motion, which was served on the Attorney-General by regular mail and which was in fact received by and responded to by his office, may be heard.
The proposed claim purports to state a cause of action for physical and emotional injuries incurred on August 27, 1986, when claimant was allegedly beaten on the head and face by a correction officer at Eastern New York Correctional Facility. Claimant alleges that the assault was unprovoked and that, in fact, he was immobilized by handcuffs attached to a waist restraint at the time of the beating. A claim containing identical allegations and brought by the same claimant (claim *755 No. 47480) was dismissed by this court in July because claimant had failed to serve the Attorney-General either in person or by certified mail — the forms of service that, as noted, are required by section 11 of the Court of Claims Act. In that earlier decision (mem opn and order, motion No. M-37148, July 20, 1987), we advised the pro se claimant that his only recourse was to make the instant motion for late filing.
Most of the factors that the court is statutorily required to consider in assessing a section 10 (6) motion favor granting such relief, and the State objects only on the grounds that the claim appears to lack merit and that the movant does not set forth an acceptable reason for his delay.
The prior order of this court included a statement that "[o]n the basis of its untested allegations” the claim stated a meritorious cause of action. The term "untested” made it clear that the issue of merit had not been addressed by the State in that earlier motion and, thus, the court’s statement was not a predetermination of this issue. (See generally, Ortiz v City of New York, 136 Misc 2d 500 [Sup Ct, NY County 1987].) Now that the State has had its opportunity to contest the apparent merit of the claim, it has failed to do so successfully.
The State asserts that claimant failed to mention whether he was subject to disciplinary action as a result of events occurring at the time of the alleged beating. Such information would be irrelevant to the merit of the stated cause of action. As claimant does not allege that he was unlawfully placed in handcuffs or otherwise restrained, it must be assumed he had committed some infraction at the time of the incident. Whatever his misbehavior may have been, the allegation of the claim was that he was brutally beaten after he was restrained and unable to defend himself. Beating helpless individuals — no matter how dangerous they may have been moments before — is, to our knowledge, behavior that is not countenanced by any law to which we are subject. In addition, for reasons stated more fully in Gayle v State of New York (135 Misc 2d 570 [Ct Cl 1987]), the court rejects the State’s position that because the incident arguably involved the area of prison discipline the action would lie outside the jurisdiction of this court. (See also, Ford Motor Credit Co. v State of New York, 133 AD2d 980 [3d Dept 1987].) Accordingly, if claimant’s allegations are accepted as true, which they must be at this juncture, the proposed claim has sufficient apparent merit to warrant permission for late filing. *756 (See, Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1, 11 [Ct Cl 1977].)
Claimant’s excuse for delay was his alleged inability to effect proper service of the initial claim because he was indigent and unable to obtain funds to pay the costs of certified mail. Defendant asserts that claimant has "misled” the court in this regard because his inmate account now contains sufficient funds to accomplish such service. Accepting the accuracy of this information, it nevertheless has no bearing on the critical question of whether claimant had such funds during the 90 days after accrual of his cause of action. The current motion papers include statements from officials of the Eastern New York Correctional Facility and the Department of Correctional Services indicating that in late 1985 and early 1986, the relevant time period for filing of a timely claim, claimant owed the Department over $200 and that he would not be advanced funds exceeding the Department’s limit of $20. This information, together with claimant’s statement in opposition to the earlier motion that he would not have been advanced any money because his debt to the Department exceeded $200, satisfies the court that his indigency was the reason he failed to satisfy the service requirements, and consequently the time requirement, for litigation in this court. There was no appreciable delay between the dismissal of claimant’s prior action and the initiation of this motion.
In view of the above, movant’s application for permission to file a late claim is granted. He is directed to file his claim with this court and to serve a copy of the claim on the Attorney-General within 30 days of receipt of this order. The contents of the claim and its service must comply in all respects with the requirements of Court of Claims Act § 11, including service of the claim by personal service or by certified mail. To establish timeliness, the claim should also recite the outcome of this motion.