OPINION OF THE COURT
W. Brooks DeBow, J.
Claimant, an individual incarcerated in a state correctional facility, has filed this claim in which he seeks damages arising from 72 days of allegedly wrongful excessive confinement in a special housing unit (SHU) beyond the date when defendant received notice of the administrative reversal of the finding of guilt on disciplinary charges. Claimant moves for summary judgment, and defendant opposes the motion.
A movant for summary judgment must establish, by proof in admissible form, the right to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]). If the movant establishes prima facie entitlement to summary judgment, the burden then shifts to the opponent of the motion to establish, by admissible proof, the existence of genuine issues of material fact (see Alvarez v Prospect Hosp.; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Summary judgment, which is the procedural equivalent of trial, is a drastic remedy and it should not be granted where there is any doubt as to the existence of triable issues of fact (S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). On a motion for summary judgment, “issue finding, rather than issue determination, is [the court’s] function” (Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182 [1994]). In reviewing the papers submitted on a motion for summary judgment, the court must examine the proof in a light most favorable to the party opposing the motion (Robinson v Strong Mem. Hosp., 98 AD2d 976 [4th Dept 1983]).
In the context of prison disciplinary proceedings, “the actions of Correction Department employees in preparing and filing misbehavior reports, confining inmates, and making dispositions following Superintendents’ hearings entail discretionary *220 decisions” that are quasi-judicial in nature (Arteaga v State of New York, 72 NY2d 212, 219 [1988]) and which are cloaked with absolute immunity (id.). However, the release of an inmate from keeplock or SHU confinement upon the expiration of a disciplinary penalty “is a purely ministerial act invoking no discretionary authority” (Gittens v State of New York, 132 Misc 2d 399, 406 [Ct Cl 1986]), and when an inmate is subjected to continued disciplinary confinement that lacks a statutory or regulatory basis, defendant may be liable for failing to timely release him from the disciplinary confinement (see id.; Minieri v State of New York, 204 AD2d 982 [4th Dept 1994] [state liable for 40 days of SHU confinement after administrative reversal of disciplinary determination]). To the extent that this claim sounds not in mere failure to perform a ministerial act but asserts a cause of action sounding in unlawful confinement, the elements of such a cause of action are that “(1) the defendant intended to confine [claimant], (2) the [claimant] was conscious of the confinement, (3) the [claimant] did not consent to the confinement and (4) the confinement was not otherwise privileged” (Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975]). The dispositive element of wrongful confinement on claimant’s motion for summary judgment is that of privilege, i.e., the legal basis for defendant’s continued confinement of claimant in a SHU after the date on which he asserts he should have been released from the SHU. Defendant’s confinement of claimant in an SHU is privileged if it was in accordance with the regulations of the Department of Corrections and Community Supervision (see Lee v State of New York, 124 AD2d 305, 307 [3d Dept 1986]; see also Gittens v State of New York, 132 Misc 2d at 402).
The affidavit and exhibits that claimant submits in support of his motion demonstrate the following. A tier III hearing on two inmate misbehavior reports (IMRs) was conducted at Green Haven Correctional Facility (CF), and completed on December 4, 2013, at which time claimant was found guilty of violations of several institutional rules (see claimant’s aff, exhibit E). The disciplinary sanctions that were imposed included SHU confinement for eight months, starting on October 25, 2013, with two months suspended (see id.), yielding a release date of April 25, 2014. Shortly after the tier III determination and prior to a decision on his administrative appeal therefrom, claimant was transferred to Upstate CF, a SHU facility, to *221 serve his disciplinary sanction. Claimant’s records demonstrate that he received a reduction of four weeks from his SHU time, and that the disciplinary penalty would have been fully served as of March 28, 2014 (see id., exhibit J).
By notification dated February 25, 2014 and stamped received at the Upstate CF disciplinary office on February 26, 2014, claimant’s disciplinary determination was reversed (see id., exhibit H). The notification directed defendant to “commence rehearing within 7 days and complete within 14 days of receipt of this notice” (id.). Claimant concedes that his rehearing was timely commenced, but he asserts that “defendant’s employees at the Upstate Correctional Facility never completed claimant’s rehearing” (claimant’s aff at 4). Claimant remained confined in a SHU at Upstate CF until he was transferred to Shawangunk CF, a general population facility, on or about May 8, 2014. Claimant therefore contends that he was wrongfully confined in the SHU for a period of 72 days, from the date of reversal of his tier III determination on February 25, 2014 through May 7, 2014. Alternatively, claimant contends that his period of wrongful confinement commenced on March 28, 2014, the date on which he should have been released from SHU upon completion of his SHU penalty for the finding of guilt on December 4, 2013.
Claimant’s affidavit and the supporting exhibits establish the administrative reversal of the disciplinary determination on February 25, 2014, and that defendant was obligated to commence the rehearing by March 5, 2014, and complete it by March 12, 2014, 7 and 14 days, respectively, after defendant’s receipt of the notice of reversal on February 26, 2014. Claimant’s affidavit asserts that the hearing was timely commenced, but that it was not timely completed. Claimant’s submission in support of the motion also patently demonstrates that defendant intended to confine claimant in SHU beyond February 25, 2014, and that claimant was conscious of the confinement and did not consent to it (see claimant’s aff, exhibits L, M). Although these exhibits demonstrate that defendant’s intention was to keep claimant in SHU until the rehearing was completed, the source of lawful authority for that continued confinement is not found in claimant’s submission, and thus he has demonstrated the absence of privilege for the continued confinement. Thus, claimant has established prima facie that he was improperly retained in SHU from February 25, 2014 until May 7, 2014.
*222 Defendant concedes the facts that are affirmatively established by claimant except for claimant’s contention that the rehearing was never completed. Defendant asserts that the rehearing was recommenced on May 23, 2014 at Shawangunk following a series of requested and approved extensions, and that the rehearing was timely completed on June 4, 2014 (see Rotondi affirmation ¶¶ 9-11; defendant’s exhibit A [superintendent hearing disposition rendered sheet; and disciplinary hearing extension request (three pages)]). Defendant further argues that the continued confinement of claimant in SHU while awaiting the rehearing was privileged pursuant to 7 NYCRR 251-1.6 (a), citing Matter of Pettus v West (28 AD3d 907, 908 [3d Dept 2006]) and Lowrance v Achtyl (20 F3d 529 [2d Cir 1994]). In other words, defendant argues that the extended period of time that claimant was held in SHU was privileged because: (1) defendant’s regulations authorized it to confine claimant pending completion of the rehearing; and (2) the hearing was timely completed because defendant requested and was granted extensions of time to complete the hearing. While the certified record of the superintendent’s hearing provides evidence that raises an issue of fact as to the second of these propositions, it does not contain evidence that could raise an issue of fact as to defendant’s regulatory right to continue claimant’s confinement in the SHU following the reversal of the first superintendent’s hearing (see Rotondi affirmation, exhibit A).[1]
With regard to the timely commencement and completion of disciplinary hearings, defendant’s rules provide that where, as here, the inmate is confined pending a superintendent’s hearing, the hearing must be commenced within seven days of the confinement (7 NYCRR 251-5.1 [a]). As specifically pertinent to this claim, the notification of the administrative reversal and direction to conduct a new hearing required that it be commenced within seven days of defendant’s receipt of that notification. As noted above, claimant concedes that the rehearing was timely commenced. With respect to conclusion of the hearing, the notification of administrative reversal required *223 that the hearing be completed within 14 days of receipt of the notification of reversal (cf. 7 NYCRR 251-5.1 [b] [hearing must be completed within 14 days of the date of an IMR]). Although claimant has contended that the hearing was not completed by the time he was transferred out of the SHU on May 8, 2014, defendant’s submission demonstrates that the hearing was completed at Shawangunk CF on June 3, 2014, prior to the expiration of the final extension.[2] With regard to extensions of the time to complete a superintendent’s hearing, defendant’s rules provide that “[w]here a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals” (7 NYCRR 251-5.1 [b]). Although the record lacks any indication whether claimant was made aware of the reasons for the requested delays of the rehearing, the “Disciplinary Hearing Extension Request” report in the record demonstrates that there were 13 requests for extensions for a number of reasons, including the unavailability of the hearing officer and/or Spanish-speaking assistants, procurement of evidence including witnesses and documents, and claimant’s transfer from Upstate CF to Shawangunk CF. This evidence raises a material issue of fact as to whether the rehearing was timely completed, and thus, to the extent that claimant seeks summary judgment on his claim for wrongful confinement due to defendant’s failure to complete the rehearing, his motion cannot be sustained.
When a finding of guilt following a superintendent’s hearing is administratively reversed, an inmate is to be released from an SHU after the reversal (see Minieri v State of New York, 204 AD2d 982 [4th Dept 1994]). Here, because the administrative reversal included a directive that a new hearing be conducted, defendant argues that claimant’s continued confinement was privileged, and it relies upon 7 NYCRR 251-1.6 (a), which provides that
“confinement is warranted ‘[w]here an officer has reasonable grounds to believe that an inmate . . . *224 represents an immediate threat to the safety, security or order of the facility.’ It has been held that this regulation can be interpreted as ‘authorizing keeplock whenever an officer reasonably believes that a facility rule has been violated by an inmate, thus establishing an “immediate threat” to the “order of the facility” ’ ” (Matter of Pettus v West, 28 AD3d at 908 [pre-hearing keeplock confinement authorized where inmate charged in IMR with possessing an authorized item (stamps) in an unauthorized area (recreation yard)]; see Matter of Bowe v Smith, 119 Misc 2d 453, 455 [Sup Ct, Wyoming County 1983]; Lowrance v Achtyl).
This argument is insufficient to defeat claimant’s motion for summary judgment for three reasons.
First, 7 NYCRR 251-1.6 (a) authorizes “confine [ment] to [an inmate’s] cell or room or housing area” upon the belief of an “officer,” but it does not authorize confinement to an SHU 0compare 7 NYCRR 251-1.6 [d] [confinement in SHU to be ordered by superintendent or officer in charge of facility after reasons therefor have been reported by an officer or superior officer]). In opposition to claimant’s motion, defendant has not submitted evidence that claimant’s confinement in the SHU following the administrative reversal was pursuant to an order of the superintendent or officer in charge of Upstate or Green Haven CFs (see Rodriguez v State of New York, Ct Cl, Mar. 31, 2014, Bruening, J., UID No. 2014-048-534), or was otherwise lawfully authorized.
Second, defendant has not demonstrated that the rules that authorize pre-hearing confinement — that is, confinement immediately following the incident that gave rise to an IMR and prior to the hearing — are applicable when, as here, the inmate has already been confined in an SHU during the pendency of his administrative appeal and is now subject to continued confinement prior to a rehearing on the same IMRs (cf. 7 NYCRR 301.3 [a] [detention admission authorized while awaiting initial appearance before or determination of a superintendent’s hearing]).
Third, to the extent that 7 NYCRR 251-1.6 (a) is applicable here, it authorizes confinement when an inmate poses an “immediate threat” to the order of the facility (see Matter of Bowe v Smith; Matter of Pettus v West). Although claimant’s IMRs demonstrate that he was charged with violent conduct, the *225 IMRs were dated October 25, 2013 with reference to an incident on that same date. The allegedly wrongful excessive confinement in the SHU did not begin until February 26, 2014. Any inference that could be drawn from the IMR that claimant posed a threat to the order of the facility in October 2013 was not apparent four months later, and accordingly, the IMRs that are submitted by defendant do not raise an issue of fact regarding an “immediate” threat that authorized confinement beginning on February 26, 2014 (cf. 7 NYCRR 251-2.2 [e] [requiring the facility review officer to review the status of keeplocked inmates pending review of IMRs, and authorizing the review officer to “order the release of an inmate who is no longer a threat to the safety and security of the facility or to himself”]). Nor has defendant offered any evidence from the initial hearing or otherwise that claimant posed a continuing “immediate” threat to the order of the facility (compare Matter of Kalonji v Fischer, 102 AD3d 1041, 1042 [3d Dept 2013] [pre-hearing keeplock status “was based upon a concern for the safety and security” of two individuals who worked at the CF]).
Finally, defendant’s alternative argument that it was privileged to confine claimant in the SHU for the first seven days from the date of his administrative reversal pending his rehearing (see Rotondi affirmation ¶ 17) is without merit because, as discussed above, defendant has not demonstrated that the authority to confine an inmate pending an initial hearing provides authority to hold the inmate pending a rehearing after an administrative reversal. Further, and even if the authority to hold an inmate extends to the period preceding a re hearing, defendant has not demonstrated the authority or factual basis to hold claimant in an SHU for those seven days.
In sum, claimant has demonstrated that the finding of guilt on two IMRs was administratively reversed on February 25, 2014, thus entitling him to release from the SHU (see Minieri v State of New York). He has demonstrated that he was kept in the SHU for 72 days until his transfer to Shawangunk CF on May 8, 2014, that defendant intended to so confine him, that he was aware of and did not consent to such confinement, and that the continued confinement in the SHU was not privileged. In opposition to the motion, defendant argues that its continued retention of claimant in the SHU was privileged, but it has not demonstrated any applicable lawful authority for that continued SHU confinement, nor has it submitted evidence that could justify the continued confinement in SHU after administrative *226 reversal of claimant’s disciplinary determination. Accordingly, claimant’s motion for summary judgment will be granted on the issue of liability.
Claimant’s motion for summary judgment also seeks an award of damages in the amount of $50 per day of excessive SHU confinement, totaling $3,600. Claimant’s motion, however, lacks evidence of claimant’s damages to establish his entitlement to a judgment on damages, and thus, the claim will be scheduled for a trial of damages.
Accordingly, it is ordered, that claimant’s motion for summary judgment is granted in part to the extent that defendant is 100% liable for damages arising from claimant’s wrongful excessive confinement in a SHU for 72 days, and it is further ordered, that a trial on the issue of damages shall be scheduled as soon as practicable.

. Exhibit A to the Rotondi affirmation is a certified record of the tier III hearing packet, and thus, provides evidence in admissible form in support of defendant’s opposition to the motion. The Rotondi affirmation itself, however, is without probative value because any facts offered therein are not based upon the attorney’s personal knowledge (see 2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d 1392, 1395 [3d Dept 2009], lv denied 14 NY3d 706 [2010]; Teddy’s Drive-In v State of New York, 63 AD2d 1070, 1072 [3d Dept 1978]).

. In reply to defendant’s opposition to his motion, claimant argues that the superintendent’s hearing was not completed at Upstate CF, and that the rehearing was conducted while he was in general population at Shawangunk CF, but he does not address defendant’s showing that the rehearing on the October 25, 2013 IMRs was commenced at Upstate CF and then continued after he was transferred to Shawangunk CF. His further assertion that the rehearing packet of the proceedings at Upstate CF was erased or destroyed is unsupported, and contradicted by defendant’s exhibit A.