Padilla v State of New York (2025 NY Slip Op 50513(U))

[*1]

Padilla v State of New York

2025 NY Slip Op 50513(U)

Decided on April 2, 2025

Court Of Claims

Marnin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 2, 2025
Court of Claims

John Padilla, Claimant,

against
The State of New York,[FN1] Defendant.

Claim No. 135182

For Claimant: 
JOHN PADILLA, PRO SE
For Defendant: 
HON. LETITIA JAMES, NEW YORK STATE ATTORNEY GENERAL 
By: Dorothy M. Keogh, Assistant Attorney General

Seth M. Marnin, J.

Claimant John Padilla, appearing pro se, filed this claim on August 7, 2020, seeking damages from the defendant 
because the Department of Corrections and Community Supervision ("DOCCS") wrongfully confined him in the Special Housing Unit ("SHU") for 168 days while he was incarcerated at Sing Sing Correctional Facility ("Sing Sing"). The claim alleges that DOCCS violated several procedural rules and regulations related to the disciplinary proceedings that resulted in his wrongful confinement.
A trial of this wrongful confinement claim was conducted virtually on January 22, 2025 utilizing the Microsoft Teams platform, with the Court presiding at the Court of Claims in New York, New York. The claimant appeared from Shawangunk Correctional Facility, and the Assistant Attorney General from her work location.
At trial, claimant testified on his own behalf, called no witnesses, and offered into evidence nine exhibits:
Ex. 1 Misbehavior Report;
Ex. 2 Hearing Disposition dated October 9, 2019;
Ex. 3 Claimant's Appeal of Hearing Disposition;
Ex. 4 Letter from DOCCS Director of Special Housing/II Disciplinary Program D. Venettozzi [*2]reversing hearing disposition dated December 10, 2019;
Ex. 5 Rehearing Disposition dated January 28, 2020;
Ex. 6 Claimant's Appeal of Rehearing Disposition;
Ex. 7 Letter from DOCCS Director of Special Housing/II Disciplinary Program D. Venettozzi reversing rehearing disposition dated February 11, 2020;
Ex. 8 Claimant's Penalty Record;
Ex. 9 Verified Claim.
Defendant consented to all nine exhibits which were received into evidence.
The State called Lieutenant Brian Bodge, a 35-year employee of DOCCS, as its only witness and did not offer any exhibits.
Relevant Testimony and Findings of Fact [FN2]
Mr. Padilla credibly testified at trial that on August 23, 2019, while incarcerated at Sing Sing, he was issued a Misbehavior Report dated August 22, 2019. The Misbehavior Report included allegations that Mr. Padilla assaulted another incarcerated individual, was in possession of a weapon, had engaged in violent conduct, and had created a disturbance. (See also exhibits 1 and 2.) As a result of these allegations Mr. Padilla was immediately transferred to the SHU. (See exhibit 2 at 7 and exhibit 3 at 16.)[FN3]
A Superintendent's disciplinary hearing began on September 2, 2019. Mr. Padilla entered a plea of not guilty. (Exhibit 9 at 2, ¶ 5; exhibit 2 at 4.) At 5:01 PM on September 5, 2019, the facility requested an extension of time to complete the hearing. On September 6, 2019, the facility's request was granted. The facility then made seven additional requests for more time to complete the hearing, each of which was approved, and ultimately concluded the hearing on October 8, 2019. (Exhibit 2 at 2; exhibit 3 at 17 - 18.) The Hearing Officer found Mr. Padilla guilty on all charges (exhibit 2 at 2) and imposed sanctions of 84 days [FN4]
in the SHU, in addition to the 49 days of pre-hearing confinement (for a total of 133 days), which was scheduled to conclude on January 1, 2020. (Exhibit 2 at 2 and exhibit 8.) In addition to 84 days in the SHU, sanctions also included the loss of commissary, packages, visitation, and phone for 201 days, and the loss of 6 months of good time. (Id.)
Mr. Padilla appealed the Hearing Officer's determination on three grounds: that he was denied adequate employee assistance; that the first request for an extension to complete the hearing was untimely granted; and that the third request for an extension was granted after the second extension had expired rendering it invalid. (Exhibit 3 at 2 — 12.) The appeal was granted on December 10, 2019 with instructions to commence a rehearing within 7 days and complete the hearing within 14 days of receipt of notification. (Exhibit 4.)
The rehearing did not begin until December 19, 2019 and did not end until January 28, [*3]2020. (Exhibit 5 at 2.) Mr. Padilla was again found guilty of all charges and assigned a penalty of 168 days in SHU with a start date of August 22, 2019 and a release date of February 6, 2020. (Exhibit 5 at 2.) Mr. Padilla appealed the decision from the second hearing, again raising the untimeliness of the original request for an extension to complete the hearing. He also argued that the second hearing officer violated 7 NYCRR § 254.8 (d) by imposing a longer penalty at the rehearing than had been imposed at the first hearing and asserted that he should not have been held in the SHU between the reversal of the decision in the first hearing and the conclusion of the second hearing (from December 10, 2019 through February 6, 2020). (Exhibit 6.) The second hearing decision was reviewed and reversed on February 11, 2020 (Exhibit 7), five days after Mr. Padilla was released from the SHU.
Although he possessed no firsthand knowledge of the events, the State's witness, Lieutenant Bodge, testified concerning the timeliness of the first hearing extension request. Specifically, he testified that the Misbehavior Report was authored on August 22, 2019 and served on the claimant on August 23, 2019. (Exhibit 1 and exhibit 2 at 2.) Although the first request for an extension of time to commence the hearing was granted on August 28, 2019, before the 14 days had passed, the next extension was applied for on the 14th day (September 5, 2019) and approved on the 15th day (September 6, 2019).
Lieutenant Bodge also addressed the retention of Mr. Padilla in the SHU between the reversal of the first hearing decision on December 10, 2019 and the conclusion of the second hearing on January 28, 2020, 28 days after Mr. Padilla was scheduled to be released from the SHU. Lieutenant Bodge testified that keeping Mr. Padilla in the SHU after the reversal of the first hearing decision and the conclusion of the second hearing (50 days) did not violate any rules or regulations of DOCCS. He explained that it was justified by the dangerous nature of the allegations against Mr. Padilla, as described in the August 22, 2019 Misbehavior Report. Lieutenant Bodge further explained that the order for the rehearing did not change Mr. Padilla's previous pre-hearing confinement status.
The Law and Analysis
The law is well-settled that when it comes to disciplinary matters, the correctional facility employee's decisions are quasi-judicial in nature and are therefore entitled to absolute immunity. (See Arteaga v State of New York, 72 NY2d 212, 216 [1988]; Ramirez v State of New York, 175 AD3d 1635, 1636-37 [3d Dept 2019].) That immunity attaches to the State so long as the underlying proceedings and decisions complied with the applicable governing rules and regulations. (Arteaga v State of New York, 72 NY2d 212, 218-220 [1988]; see also Gittens v State of New York, 132 Misc 2d 399, 402 [Ct Cl 1986] [in the context of a prison involuntary confinement proceeding, such confinement will be privileged to the extent that it was under color of law or regulation].) However, immunity is lost where prison personnel exceeded their scope of authority, violated applicable rules or laws, or failed to implement required due process safeguards. (Moreland v State of New York, 200 AD3d 1362, 1364 [3d Dept 2021]; Ramirez v State of New York, 175 AD3d 1635, 1637 [3d Dept 2019].)
Liability, of course, is not established merely because immunity was lost by showing a rule or regulation was violated. (See Moustakos v State of New York, 133 AD3d 1268, 1269 [4th Dept 2015] ["[N]ot every violation of the rules and regulations governing the imposition of prison discipline will result in liability on the part of the State; the rule violations merely remove the cloak of absolute immunity and make the State potentially liable, if liability would be imposed under common law tort principles" quoting Kilpatrick v State of New York, UID No. [*4]2001-013-031 [Ct Cl, Patti, J., Dec, 2001].) Rather, liability may be found where the claimant can demonstrate that, as a result of the rule violation, the outcome of the hearing would have been different or they would not have otherwise been confined. (Encarnacion v State of New York, 203 AD3d 1416, 1418 [3d Dept 2022].)
To prove the traditional elements of the tort of unlawful or wrongful confinement and recover damages, Mr. Padilla had to establish by a preponderance of the credible evidence that (1) the State intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged. (Broughton v State of New York, 37 NY2d 451, 456 [1975]; Encarnacion v State of New York, 203 AD3d 1416, 1417-1418 [3d Dept 2022].) There is no dispute that the State intended to confine Mr. Padilla, that he was conscious of the confinement, and that he did not consent to his confinement. Therefore, the only remaining issue is whether that confinement was privileged. That is, had the rule — or in this case, rules — not been broken, would he not have been confined or not confined for the entire amount of time?
As discussed above, Mr. Padilla has alleged three distinct violations of rules, regulations, and/or due process protections that require analysis: (1) the timeliness of the request to extend the time to complete the first hearing; (2) his confinement to the SHU between the reversal of the first hearing and the conclusion of the second hearing; and (3) the penalty imposed by the second hearing officer that exceeded the first hearing officer's by 37 days. For the sake of clarity, the Court will address each in turn.
Timeliness of the Request to Extend 

 the Time to Complete the First Hearing
DOCCS' regulations [FN5]
require a disciplinary hearing to be commenced within 7 days of an incarcerated individual's confinement to the SHU and completed within 14 days "following the writing" of the Misbehavior Report. (7 NYCRR § 251-5.1.) The Misbehavior Report was written on August 22, 2019 and therefore the hearing should have been completed by September 5, 2019. The evidence reflects that DOCCS sought an extension of time to complete the hearing on September 5, 2019 at 5:01 PM and that the request for an extension was granted on the morning of the fifteenth day, September 6, 2019. Claimant directs the Court's attention to Matter of Rodriguez v Coughlin which held that because a time extension was not granted until after the 14-day requirement had expired, the extension of time to complete the hearing was untimely and thus "of no effect" (143 Misc 2d 876, 878 [Sup Ct, Clinton County 1989]).
The Court agrees that the extension was untimely. Although the request to extend the time was made on the fourteenth day, both claimant's and defendant's testimony and the evidence admitted at trial demonstrate that the extension was not granted until the fifteenth day. However, our appellate courts have consistently held that, without a showing that the delay caused prejudice in the proceedings, the time limits outlined in the regulations are "directory" rather than "mandatory." (See, e.g., Miller v State of New York, 156 AD3d 1067, 1067 [3d Dept 2017]; Davidson v State of New York, 66 AD3d 1089, 1090 [3d Dept 2009].) Although the caselaw offers limited insight into what constitutes prejudice, the Court, in reliance on Miller v State of New York, concludes that there are two ways to establish prejudice. It can be demonstrated by showing either that the outcome of the hearing — a finding of guilty or not guilty — would have been different but for the delay or that there was prejudice in the [*5]proceedings as a result of the delay — that the penalty was greater than it otherwise would have been but for the delay. (See Miller v State of New York, 156 AD3d 1067, 1068 [3d Dept 2017] ["claimant failed to establish any prejudice as a result of the delay or that, but for the delay, the outcome of the hearing would have been different"] [emphasis added].)
Mr. Padilla therefore needed to establish at trial that the one-day delay in granting the extension changed the outcome of the hearing or that the one-day delay in granting the extension itself caused prejudice, extending the time that he was confined. However, there was no testimony or evidence offered at trial to establish that either the outcome of the hearing would have been different but for the untimely granting of the extension or that Mr. Padilla was prejudiced in the proceedings as a result of the untimely granting of the extension.[FN6]
 Therefore, Mr. Padilla has not established by a preponderance of the evidence that the State should be liable for damages as a result of failing to timely obtain an extension to complete the hearing.

Confinement Between Reversal of First Hearing and Conclusion of Second Hearing
Mr. Padilla's second cause of action, that he should not have been confined for the 50 days between the reversal of his first hearing and the conclusion of his second hearing, fares better. Courts have consistently held that when an incarcerated individual's disciplinary hearing decision is administratively reversed, they are to be released from the SHU. (See Minieri v State of New York, 204 AD2d 982, 982 [4th Dept 1994]; Hernandez v State of New York, 48 Misc 3d 218, 220 [Ct Cl 2015].) Contrary to defendant's arguments, this is true even when a rehearing has been ordered. (See Williams v State of New York, UID No. 2018-040-057 [Ct Cl, McCarthy, J., July 2, 2018].) Courts have also found that this is a ministerial act that does not require discretion. (Gittens v State of New York, 132 Misc 2d 399, 406 [Ct Cl 1986].)
The defendant maintains it was justified in not releasing Mr. Padilla. Lieutenant Bodge testified that the retention of Mr. Padilla in the SHU between the reversal of the decision and the conclusion of the second hearing did not violate any rules or regulations. He points to the violent nature of the alleged misconduct in the August 22, 2019 Misbehavior Report and testified that Mr. Padilla remained in the SHU during this period because Mr. Padilla had been confined pre-[*6]hearing and the reversal of the decision did not change his pre-hearing confinement status. Beyond referencing the Misbehavior Report, which had been issued 110 days before the hearing decision was reversed — and during which time Mr. Padilla was confined to the SHU, the State cited to no regulation, law, or other evidence to support its position.
DOCCS' authority to confine incarcerated individuals in the SHU can be found in 7 NYCRR 301.2 (disciplinary admission) and 7 NYCRR 301.3 (a) (1) (detention admission). Detention admission refers to when an incarcerated individual "is awaiting initial appearance before or determination of a [disciplinary hearing or] superintendent's hearing." (7 NYCRR 301.3 [a] [1] [emphasis added].) For Mr. Padilla, that period of time was August 22, 2019 to October 9, 2019. Disciplinary admission, on the other hand, refers to the designated period of time to which a hearing officer sanctions an incarcerated individual. Here, that period of time, at least from the first hearing and prior to the decision's reversal, was October 10, 2019 to January 1, 2020. When the October 9, 2019 hearing decision was reversed on December 10, 2019, the defendant no longer had authority to keep Mr. Padilla in the SHU pursuant to 7 NYCRR 301.2 (disciplinary admission). To the extent the defendant is relying on 7 NYCRR 301.3 (a) (1), their reliance is misplaced. Mr. Padilla was simply not awaiting an initial appearance; he was awaiting a rehearing.
Although there was no evidence or testimony that Mr. Padilla engaged in the violent behavior alleged in the Misbehavior Report while he was in the SHU for those 110 days, to the extent the defendant had actual reason to believe that Mr. Padilla remained a threat to the safety, security, or order of the facility or was an immediate threat to others, it perhaps would have had the authority, pursuant to 7 NYCRR 251-1.6 (a), to place him in keeplock while he was awaiting the rehearing. There was no evidence offered that it did so. Moreover, if defendant believed that placing Mr. Padilla in keeplock was insufficient to protect the safety, security, or order of the facility and others, that would have needed to be reported to the superintendent or officer in charge of the facility and that person could order confinement to the SHU. (7 NYCRR § 251-1.6 [d].) However, there was no evidence or testimony offered at trial to even suggest that any such report or order was made. The Court therefore concludes that defendant was without legal authority to confine Mr. Padilla for the 50 days between the reversal of the hearing decision and the conclusion of the second hearing and doing so was in contradiction of principles of due process. (Matter of Doe v Coughlin, 71 NY2d 48, 53 [1987] [incarcerated individuals do not forfeit their right to due process when additional deprivation of life, liberty, or property is imposed].)

New Hearing Penalty Exceeded the Original
Finally, it is evident from the testimony and evidence presented at trial that, at the conclusion of Mr. Padilla's rehearing, the defendant imposed a penalty that was 37 days longer than it had in the original hearing. In its closing, the State all but conceded this. DOCCS' regulations expressly prohibit a hearing officer at a rehearing from imposing a penalty that "exceed[s] the penalty imposed at the original hearing." (7 NYCRR 254.8 [d].) And this is precisely what they did.
Based on the foregoing, the Court finds that Mr. Padilla has established by a preponderance of the evidence that DOCCS wrongfully confined him for the 50-day period between the reversal of the first hearing and the conclusion of the second hearing (December 10, 2019 — January 28, 2020) and for the 37 days that exceeded the penalty of the first hearing [*7](January 1, 2020 — February 6, 2020). Mr. Padilla should therefore be compensated for 59 days [FN7]
of wrongful confinement. (Zarcone v Perry, 78 AD2d 70, 79 [2d Dept 1980] [double recovery not permitted].)
The Court awards Mr. Padilla the sum of four thousand, four hundred twenty-five dollars ($4,425) as damages for wrongful confinement and loss of privileges as set forth above. To the extent that claimant has paid a filing fee, it may be recovered pursuant to Court of Claims Act § 11-a (2). 
Any motions not previously decided are hereby DENIED.
The Chief Clerk is directed to enter judgment accordingly.
April 2, 2025
New York, New York
SETH M. MARNIN
Judge of the Court of Claims

Footnotes

Footnote 1:The caption has been amended sua sponte to reflect the State of New York as the only properly named defendant and to conform the caption to Court rules and customary form.

Footnote 2:Unless otherwise indicated, all quotations are to the audio recording of the trial of this claim.

Footnote 3:For the purposes of consistency and clarity, page numbers for exhibits correspond to the page of the PDF.

Footnote 4:The Hearing disposition reflects a 174-day penalty less 90 days, which equals 84 days. The November 27, 2019 "Inmate [sic] Current Sanctions" report reflects a sanction of 84 days. The Court therefore concludes, having been offered no other explanation, that the penalty was for 84 days. 

Footnote 5:References to regulations are to the versions in effect at the time of the incident.

Footnote 6:There was no suggestion, for example, that the one-day delay caused the cascading delays that resulted in Mr. Padilla's pre-hearing confinement for 48 days. Moreover, had Mr. Padilla's claim been that the 43 days of pre-hearing confinement were not privileged, the Court would have adopted Judge Liccione's reasoning in Perkins v State of New York, (UID No. 2022-059-004 [Ct Cl, Liccione, J., Jan. 19, 2022]) recognizing the protracted delays that result in lengthy confinements caused substantial prejudice and are therefore not entitled to immunity and liability may be found. Incarcerated individuals who have been charged with violating prison regulations are entitled to due process protections. (Matter of Henry v Fischer, 28 NY3d 1135, 1138 [2016]; see also Smythe v State of New York, UID No. 2020-015-069 [Ct Cl, Collins, J., Aug. 20, 2020]; Perkins v State of New York, UID No. 2022-059-004 [Ct Cl, Liccione, J., Jan. 19, 2022].) The opportunity to timely be heard is a fundamental requirement of due process (Mathews v Eldridge, 424 US 319, 333 [1976]) and this requirement is especially compelling when an individual is already in excessive confinement. (Matter of Elizabeth C. [Omar. C.], 156 AD3d 193, 206-210 [2d Dept 2017].) However, having carefully reviewed the claim, testimony, and evidence, Mr. Padilla does not assert that he was prejudiced by the subsequent seven requests to extend the hearing.

Footnote 7:Confinement from December 10, 2019 through February 6, 2020 was 59 days. Mr. Padilla cannot recover double damages from the overlapping period of January 1, 2020 — January 28, 2020.